THE NEWTON MANUFACTURING COMPANY, plaintiff in error, *vs.* H. & T. M. WHITE, defendants in error.

1. Where one buys cotton, stored in a certain house, which he is to remove, and in so doing gets other cotton belonging to the seller stored in another house, the owner in suing for such last mentioned cotton is not compelled to bring an action in *tort*, but may sue in assumpsit.

2. The measure of recovery in such an action is the value of the cotton at the time it was taken by the defendant, with interest.

3. If the claim sued for be solely for cotton taken from a certain house, and the testimony relied on for a recovery be confined to that, and the jury be exclusively restricted to that in considering their verdict, then a judgment in favor of plaintiffs *vs.* defendant, rendered in another action for cotton obtained at another and different place, is irrelevant testimony.

4. If it be not clear that the cotton sued for, or any part thereof, is not covered by such judgment, then the same should be admitted and the question of former recovery left to the jury.

5. To make the sayings of an agent admissible in evidence against the principal, it should appear that they were made whilst in the prosecution of the enterprise to which they refer.

Pleadings. Sale. Damages. Evidence. Former recovery. Principal and agent. Before Judge HALL. Newton Superior Court. September Term, 1873.

H. & T. M. White brought assumpsit against the Newton Manufacturing Company for $31,250 00, besides interest, alleged to be due for sixty-two thousand, five hundred pounds of ginned cotton, had and received from the plaintiffs. This cause of action was set out in various ways by different counts, not material here. The defendant pleaded the general issue.

The evidence for the plaintiffs presented the following case :

In the early part of the year 1865 the plaintiffs had cotton stored at three different places in Newton county, to-wit: the "Heard place," the "Holcombe place," and in a warehouse on the Alcora river. Prior to January 1st, 1865, Hugh White, one of the plaintiffs, on his individual account, exchanged with the defendant sixty-two thousand five hundred pounds of the cotton stored at the first two of the above mentioned points, for a like amount at the Ocmulgee Mills. By an arrangement with T. M. White, a sufficient amount of the cotton stored as above indicated, to meet the obligations of the above trade, was turned over to Hugh White. In January, 1865, the defendant commenced hauling the cotton away. In 1864, when the plaintiffs were preparing to return their property for taxation, they counted the bales at the river warehouse, and found that they had one hundred and twenty-eight bales, averaging in weight four hundred and sixty-eight pounds. In the summer of 1866, desiring to use the cotton, they ascertained that there were only eighty-eight bales there. The plaintiffs had no personal knowledge as to what became of the missing forty bales, except as to four. They consented for the defendant to take these four bales upon one occasion when it was in need of cotton for manufacturing purposes, and that at the Holcombe place was too wet; but special notice was then given to the defendant that this was the cotton of the plaintiffs and not of Hugh White. When the cotton was missed, the plaintiffs interrogated William F. Davis, the agent of the defendant, as to it. He stated that the defendant had taken a good deal of cotton from the river warehouse. From April 1st, 1865, to 1868, Davis was in the employment of the defendant, marking and shipping goods, buying cotton, settling with hands, etc. In the fall of 1866 a full settlement was demanded from the defendants by the plaintiffs of all their business matters, including the cotton in controversy in this suit. Objection was made upon the ground that the cotton taken from the river warehouse and the "Perry cotton" constituted a portion of that for which it had exchanged. The

The Newton Manufacturing Company *vs.* White.

river warehouse was nearer to the defendant's factory by half a mile than the Heard and Holcombe places. At the time of the demand for a settlement cotton was worth thirty cents per pound; in January, February and March, 1865, it was worth $1 00 per pound in Confederate money. The river warehouse was fastened by plank nailed across the door. The floor was of plank and puncheons held down by the cotton placed upon them. When the cotton was missed, there were signs of its having been taken out from below.

The evidence for the defendant will not illustrate any of the questions of law presented. The errors complained of sufficiently appear in the motion for a new trial.

The jury found for the plaintiffs $8,493 00. Whereupon the defendant moved for a new trial upon the following grounds, to-wit:

1st. Because the court erred in admitting in evidence the sayings of William F. Davis concerning the obtaining of cotton from plaintiffs' river warehouse.

2d. Because the court erred in rejecting the record of a former action of assumpsit between the plaintiffs and defendant, in which the former recovered from the latter $3,117 68 for the Perry cotton.

3d. Because the court erred in refusing to charge the jury "that if the cotton of plaintiffs was forcibly taken by the defendant from the warehouse of plaintiffs without authority, such taking was a trespass, and there can be no recovery for such cotton under the pleadings in this case."

4th. Because the court erred in refusing to charge the jury "that if the plaintiffs can recover, the measure of damages should be only the value of the cotton at the time of the taking, with interest."

5th. Because the court erred in charging the jury "that though it was a trespass for defendant to take plaintiffs' cotton from their river warehouse without authority, yet the plaintiffs could waive the *tort* and recover in this form of action for the cotton so taken, and the measure of damages

should be the value of the cotton at the time a settlement was demanded, with interest."

6th. Because the verdict was contrary to the law and the evidence.

The motion was overruled and the defendant excepted.

P. L. MYNATT; J. J. FLOYD; A. T. AKERMAN, for plantiff in error.

CLARK & PACE; PEEPLES & STEWART; A. M. SPEER, for defendants.

TRIPPE, Judge.

The third, fourth and fifth grounds in the motion for a new trial will be first considered. They present two questions: 1st. Can the action of assumpsit, under the facts of the case, be maintained, or should it have been in trover or trespass? 2d. If assumpsit can be sustained, what is the measure of the recovery?

1. Section 2955 of the Code says "when a transaction partakes of the nature both of a *tort* and a contract, the party complainant may waive the one and rely solely upon the other." Is not this a transaction of that sort? There was a contract for the sale of cotton stored in one warehouse, which the buyer was to remove. In doing so, it is charged that he got cotton which was in another house. The value of this last cotton is claimed in this action. Here, then, there was a contract, and one party in carrying it out committed a breach of it. It is not by any means as strong a case as *Blalock et al. vs. Phillips*, 38 *Georgia*, 216, in which it was held that the plaintiffs could waive the *tort* and sue on a contract express or implied: See, also, 17 *Georgia*, 103. It has been held, that where "a person buying three pieces of goods has double pieces delivered to him by mistake, and takes them away, the vendor may recover the difference of value, if not under a contract for goods sold and delivered, still under that for money had and received:" 1 Stephens' *Nisi Prius*, 276, note

The Newton Manufacturing Company *vs.* White.

c.   Chief Justice TINDAL, in Young *vs.* Marshall, 8 Bingham, 43, lays down the broad principle as one generally known and acknowledged in Westminster Hall, "that a party is not bound to sue in *tort* where, by suing in contract, he produces no injury to the defendant." In this case the action of assumpsit was a benefit rather than an injury to the defendant, as appears from the next question upon the point of the measure of damages.

2.   As to the measure of plaintiffs' recovery in this form of action, we think there was error in permitting that to be fixed by the value of the cotton at the time a demand may be made for a settlement. Had trover been brought, the jury would have had a large margin. They could have given the highest value proven down to the time of trial. But if so, no interest could have been allowed. It is stated in the head-note that the measure of recovery in this case was the value of the cotton at the time it was taken by the defendant, with interest. It was so held in the analagous case in 38 *Georgia*, 216, already referred to. Here the plaintiff relies upon a contract express or implied, or upon a breach of contract. In such a case, where an amount ascertained would be the damages at the time of the breach, it may be increased by the addition of legal interest from that time till the recovery : Code, section 2945.

3.   The defendant offered in evidence the record of another suit in favor of plaintiffs against the defendant, in which there was a recovery by the former of $3,117 68. The court rejected the testimony. The object of the evidence was to show that the cotton now sued for was covered by that judgment. If the claim in the action on trial be solely for cotton taken from a certain house, and the testimony relied on be confined to that, and the jury restricted to such cotton in considering their verdict, then a judgment in another action for cotton obtained at another and different place, or in other words, for other cotton, is irrelevant testimony, and cannot affect this case.

4.   But if it be not clear that the cotton sued for, or any

part thereof, is not covered by such judgment, then the record should be admitted, and the question of former recovery be left to the jury, under all the proof in the case.

5. The sayings of Davis, the agent of defendant, as to cotton having been received by the defendant, which came from the river warehouse, was admitted over objection by defendant's counsel. Plaintiff's action was for cotton which he alleged had been taken from that house, when the defendant was entitled only to that which was stored in another house. The controversy was on that point. To prove it, the sayings of the agent, made some eighteen months after the cotton is said to have been taken, were admitted in evidence. Were they competent? We think not. The agent is living, and was sworn on the trial. It is provided in the Code, section 2206, that "the declarations of the agent as to the business transacted by him are not admissible against his principal, unless they were a part of the negotiation, and constituting the *res gestæ*, or else the agent be dead." This is but an affirmation of the ancient rule, and often recognized by this court: 24 *Georgia*, 211; 26 *Ibid.*, 11; 29 *Ibid.*, 399 and 461. The case in 26 *Georgia*, 11, was whether the sayings of a conductor of a railroad train, whilst still in office, were admissible as to a past occurrence happening on his train. It was held they were not. In *Sweetwater Manufacturing Company vs. Glover*, 29 *Georgia*, 399, the sayings of two of the chief agents of the company, one the principal agent and the other a superintendent of the hands, with other powers, were admitted against the company on the trial in the superior court. Upon a review of the case in this court, it was said in the decision granting a new trial and reversing the holding on this point, "that neither these nor any other agent of the company could say anything to bind them except what he says about his appointed business while he is doing it. It must be said about his appropriate work, and said *dum fervet opus*. * * * The principle on which an agent's sayings are admitted against his principal at all, is, that they are part of the *res gestæ*." These decisions and the long set-

tled rule, must determine the question made on this point in this case, although Davis, the agent, was superintendent at the time the declaration is alleged to have been made. The transaction was over—eighteen months had passed—and no agent, after that length of time, can, by a mere declaration, impose a liability on his .principal, and by that declaration establish a fact on which a recovery is to be had.

Judgment reversed.