GOMER v. STOCKDALE.

1. PARTIES TO ACTIONS—REAL PARTY IN INTEREST.
An action may be brought in the name of the person to whom a claim has been assigned, whether it be an open account or otherwise, although there may be annexed to the transfer the condition that when the sum is collected the whole or some part of it must be paid over to the assignor.

2. PLEADING—JUSTIFICATION.
Where the defendant is sued for seizing goods and desires to justify the seizure under a chattel mortgage executed by plaintiff's assignor, he should plead and prove the security. It is questionable whether, under a general denial, the defendant could make such proof.

*Error to the District Court of Arapahoe County.*

Mr. J. W. HORNER and Mr. J. E. ROBINSON, for plaintiff in error.

Mr. JOHN S. GIBONS and Mr. G. S. RAYMOND, for defendant in error.

BISSELL, P. J., delivered the opinion of the court.

During the year 1887, Laura E. Stockdale was the owner of some lands in Park county, and Matthew. C. Jackson was a mill man engaged in making lumber. In August the parties made an agreement which, in respect to those terms essential to the decision, substantially provided that Jackson might erect his mill machinery and such temporary structures as were essential to. his milling operations on certain parts of the land. The owner also sold him the tree tops, and the cut and standing timber, with the right to fell the trees and reduce them to lumber. The consideration on Jackson's part was represented by thirteen promissory notes of five hundred dollars each, maturing monthly, beginning with the 10th day of September, 1887. To secure payment of this paper, Jackson agreed to give a mortgage on the mill machin-

ery. He executed this security. Jackson paid only a part
of the note that matured in November, and defaulted on the
other notes. Afterwards, by a written instrument, he sold and
transferred to the present appellant, Gomer, all his rights and
interest under the contract. At the time he ceased opera-
tions, there was considerable lumber at the mill, amounting
to about forty thousand feet, and some thirty thousand feet
of unreduced logs, either at the mill or cut in the woods.
Subsequent to the transfer, Gomer made demand for the
lumber and the logs, and when the owner refused to surren-
der, brought this suit. It is very peculiar in its form and in
the structure of the pleadings, which do not seem to be well
adapted to the protection or preservation of the defendant's
rights. The plaintiff set up title to the lumber and the logs
as a first cause of action, alleged the taking and removal by
the defendant Stockdale, stated the value and prayed judg-
ment. The second cause of action was of the same nature,
though it related solely to the mill and its machinery, and
the temporary structures occupied by the men. In the
answer to the first cause of action, the agreement was set
up, the execution of the mortgage stated, and it was alleged
on behalf of the defendant that the taking was under and
pursuant to the authority conferred in the mortgage. There
was a general denial, and another defense which is past easy
apprehension. It was stated that the transfer to Gomer was
without consideration, and the action was prosecuted in the
interest of Jackson. As a defense, of course, it amounted to
nothing, although it seems to have been of considerable force
in the progress of the trial. So far as concerned the second
cause of action, which related to the mill, the defendant de-
nied generally. On these issues the parties went to trial.
The plaintiff proved the amount of lumber and logs at the
mill, in the woods cut and ready for reduction, and the value.
He produced the transfer and proved the consideration, which
was apparently the settlement of some debts between Gomer
and Jackson. The defendant introduced no testimony at all.
There was an attempt by the cross-examination of the plain-

tiff's witnesses to show that as between Gomer and Jackson the transfer was not made in good faith for a valuable consideration; that the assignment was colorable and the suit prosecuted for Jackson's benefit. It was not pretended, nor was any evidence introduced to establish that, because of the agreement between Gomer and Jackson, the defendant was prejudiced or had any defense which would not have been available against Gomer as well as against Jackson. It was assumed that if Gomer paid no valuable consideration for the assignment, and Jackson was to receive the benefit, Gomer must of necessity fail in the suit. There was some loose evidence tending to show that some of this stuff had been taken under attachment; but there was nothing which would warrant a finding that it had been thus taken. In fact, counsel admitted during the progress of the trial that part of the property had come into the defendant's possession. On the conclusion of the evidence, the court charged the jury that if they should find the bill of sale was not made in good faith, and that it was without any consideration, Gomer would not be the real plaintiff; and if they found under those circumstances that he was simply a nominal plaintiff, they must find for the defendant.

Whatever may be the equities of the case or the real fact concerning the responsibility of the defendant, it is manifest the question was not necessarily settled by the verdict of the jury. The whole case in the minds of the jury may have turned directly on the question as to the character of the transaction between Gomer and Jackson. There was evidence enough offered to raise a suspicion in the minds of the jury that Gomer and Jackson had arranged to maintain this suit in Gomer's name for the recovery of the value of the lumber and the logs, hoping thereby to escape any responsibility on Jackson's part for a failure to carry out his contract, other than what was enforcible by virtue of the chattel mortgage. The testimony concerning the transaction between Gomer and Jackson was not very satisfactory in these particulars, and it is very manifest the plaintiff was prejudiced by

the court's instructions on this subject. There is much controversy in the various states respecting that almost universal code provision that a suit must be prosecuted in the name of the real party in interest. Until the true construction of that act is settled in any particular state, there is much room for discussion. It has been often adjudged that the term "real party in interest" is but a synonym for the phrase the "person having the legal title." It has accordingly been decided that it is no infraction of this statute to bring the suit in the name of the person to whom the claim has been assigned, whether it be an open account or otherwise, although there may be annexed to the transfer the condition that when the sum is collected the whole or some part of it must be paid over to the assignor. Bliss on Code Pleading, sec. 51; *Meeker v. Claghorn*, 44 N. Y. 349 ; *Allen v. Brown*, 44 N. Y. 229 ; *Bassett v. Inman*, 7 Colo. 270.

Since this doctrine prevails in Colorado, it is clear Gomer had a right to bring the suit on the transferred claim. The agreement between Gomer and Jackson concerning the disposition of the proceeds did not affect the recovery. Of course, if the transfer in any wise operated to restrict the defense which Stockdale could set up, it might be a different matter. Nothing was plead which in any manner tends to raise such a question, and this is all that can be said about it.

In answering the second defense, the defendant simply denied generally the allegation of the complaint. This second cause of action concerned the mill and its machinery, and was brought to recover for its taking. If, as would appear from the record, all this property was seized under the chattel mortgage which Jackson had executed, that instrument, if valid, would protect the defendant from a suit for damages for its removal. It is questionable whether, under the general denial, the defendant could make the proof essential to the protection of her interests as against that cause of action. From the entire record, it is very clear to us the security should be pleaded and proven in order that the

defendant might have the full benefit of whatever claim she could rightfully assert under it. Since this case must be reversed, and the time has gone by in which an application could be rightly made in this direction, the judgment will be reversed with leave to the parties to apply to the lower court for a correction of the pleadings on both sides, as they may be advised.

For the error committed by the court in its instructions to the jury, the judgment will be reversed and the case remanded.

*Reversed.*