## No. 11,024.

## TOWN OF AURORA v. WATKINS.

Decided April 6, 1925.    Rehearing denied May 4, 1925.

Action to recover municipal taxes paid.    Judgment for plaintiff.

*Reversed.*

1. MUNICIPAL CORPORATIONS—*Disconnected Lands—Taxation.* The contention of a landowner that his lands having been disconnected from a municipal corporation were not subject to taxation for the payment of water bonds theretofore issued by the town authorities, overruled.

2. JUDGMENT—*New Indebtedness.* Where a municipal corporation issued water bonds upon which judgments were subsequently recovered, to pay which judgments funding bonds were issued which in turn were replaced by refunding bonds, the refunding bonds did not evidence a new debt, but in a new form the same indebtedness created by the issuance of the water bonds.

3. *New Indebtedness.* While in some cases and for some purposes the recovery of a judgment creates a new debt distinct from the original claim, this rule will not be regarded as creating a new debt, but the old debt existing in a new form, when justice requires such a course.

4. MUNICIPAL CORPORATIONS—*Disconnected Lands—Taxation.* The right of a town to levy a tax on disconnected lands is not lost by failure of the legislature to include such a provision in reenactment.

*Error to the District Court of Arapahoe County, Hon. Samuel W. Johnson, Judge.*

Messrs. PERSHING, NYE, FRY & TALLMADGE, Mr. LEWIS A. DICK, for plaintiff in error.

Mr. L. WARD BANNISTER, Mr. SAMUEL M. JANUARY, for defendant in error.

*En banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THE plaintiff Watkins brought this action to recover from the town of Aurora the amount of taxes (with interest) levied upon his real estate situate within the town, which he paid under protest. In 1891 this land was within the boundaries of the town of Fletcher, the name of which town in 1907 was changed to Aurora. During 1891 the town issued its water bonds in the principal sum of $150,000 under an ordinance—irrepealable until all the bonds and interest thereon are paid—which provided that the bonds and the interest shall be paid out of taxes to be levied upon the property within the municipality. For several years thereafter the town authorities levied and collected taxes to pay interest. Subsequent to the year 1900 they did not levy any further taxes to pay either interest or principal. Beginning with the year 1902 the owners brought various actions on their bonds against the town and recovered judgment. At divers times between 1908 and 1915 other judgments were obtained against the town on the bonds, all of which aggregated a sum in excess of $430,000. About the time of the beginning of the actions on which these judgments were rendered, several owners of land within the boundaries of the town began proceedings to have their lands disconnected from the town under and by virtue of the provisions of chapter 106, S. L. of Colo. 1901, p. 386, providing in section 4 as follows: "The land so disconnected shall not thereby be exempt from the payment of any taxes lawfully assessed against it for the purpose of paying any indebtedness lawfully contracted by the corporate authorities of such city or town while such land was within the limits thereof and which remains unpaid, and for the payment of which said land could be lawfully taxed."

The plaintiff in this case was one of the property owners thus proceeding and he succeeded in having his land disconnected. After these judgments against the town had been recovered the judgment creditors obtained writs of mandamus compelling the town officials to levy taxes upon all taxable property within the town, including the disconnected lands, to provide a fund for the payment of interest · and principal of the judgments. Pursuant to some of these writs taxes were levied, collected and applied thereon. In 1916 a writ of mandamus was issued out of the United States District Court for the District of Colorado compelling the town authorities to levy a sufficient tax upon all of the taxable property in the town, including the disconnected land, sufficient in amount to pay a certain sum upon the particular judgment of the petitioner. Other judgments have been recovered against the town and are unpaid. Finally the municipal authorities, after years of litigation, reached the conclusion that this water bond indebtedness and the judgments rendered thereon should be paid. Negotiations were therefore begun with the judgment creditors with the result that the amount of the judgments were scaled down somewhat so that the full amount of the debt is about $430,000, and it was agreed between the parties that this sum should be the basis of the debt for payment of which the town should issue funding bonds in lieu of the judgments and then to issue refunding bonds in place of the funding bonds, since funding bonds could not be issued for a longer period than fifteen years while refunding bonds could be issued payable over a period of twenty-five years, and the longer period of time was desired by the city. The refunding bonds were ultimately issued and accepted by judgment creditors in lieu of the funding bonds. No interest was ever paid upon the funding bonds or taxes levied to pay the interest. Immediately thereafter the town authorities began levying taxes upon all the taxable property within the town, including the disconnected land of the plaintiff, to pay the interest and principal of the bonds. These taxes were levied for

the years 1917 to 1921, both inclusive, and seasonably paid by the respective land owners, including the owners of disconnected lands. One or two persons did not pay the tax levied in the year 1921. The plaintiff paid his tax for that year under protest and the pending action has for its object to recover the amount of the tax and interest thus paid under protest.

The contention of the taxpayer Watkins is that the judgment upon the original water bonds constituted a merger of the original bonded debt, and therefore the land of plaintiff should escape taxation to pay the same now represented by the refunding bonds, although it has not paid its proportionate share of the original debt. The position of the town is that the present outstanding refunding bonds represent or evidence not a new debt, but, in a new form, the same indebtedness that was created when the town of Fletcher issued its water bonds in 1891; that no new indebtedness of any kind or nature has subsequently been created or incurred; that the plaintiff's land was a part of the town of Fletcher when the original water bond indebtedness was contracted, and was, and still continues to be, subject to taxation for the interest and principal of the refunding bonds, and since the plaintiff has not paid his proportion of the tax due in 1921, which he paid under protest, he is still liable, and will continue to be liable, to pay his proportionate share of the municipal debt.

The foregoing statement of facts would seem to indicate that the land of the plaintiff, both in law and in equity, is subject to the payment of levies made for the purpose of paying this municipal debt. We think the best way to dispose of the case is to consider the four separate propositions upon which the taxpayer relies to escape payment.

1. He says that the refunding bonds are not the same indebtedness as that existing at the time of the disconnection of his land, and, therefore, the same cannot be taxed in payment thereof. It will be observed that section 4, supra, of the disconnecting statute provides that the disconnected lands shall not thereby be exempt from the pay-

ment of taxes assessed against them for the purpose of paying *any indebtedness* lawfully contracted by corporate authorities while such lands are within the limits of the town, and which tax remains unpaid, and for the payment of which the lands could be lawfully taxed. That this land could be lawfully taxed had it not been disconnected, is admitted. That the bonded indebtedness for supplying the town with water was lawfully contracted by the corporate authorities while such lands are within the limits of the town is also undisputed. The plaintiff ingeniously argues, since a contractual relation is necessary to the creation of a debt, the original water bonds of the town of Fletcher constitute a contractual relation, and when these original bonds were reduced to judgments and these judgments later were taken up by funding bonds and the funding bonds were replaced by the existing refunding bonds, the original contractual relation was extinguished and the refunding bond issue represents a different contractual relation, and therefore an indebtedness different from that represented by the original bond issue. As a conclusion therefrom the plaintiff says the disconnected lands cannot be taxed for payment of the refunding bonds because they represent an indebtedness different from that lawfully contracted by the corporate authorities while the lands were within the limits of the town. Some stress is laid by plaintiff upon the fact that these refunding bonds upon their face recite that they were given for the purpose of paying a like amount of outstanding, unpaid, lawful and valid bonds of the town, and therefore this recital, of itself, shows that the refunding bonds are an indebtedness different from that of the bonds which were thereby paid. Sufficient answer to this is that until the refunding bonds are actually paid the mere recital that they constitute payment of a different issue is not conclusive. The recital in the evidence of the debt, whatever the form may be, is not payment, and the debt persists as an obligation of the city till it is paid.

The chief reliance, however, by the plaintiff is that in-

asmuch as the original bonded indebtedness of the town
of Fletcher was merged in a judgment therein, the new lia-
bility is not merely the evidence of the former debt but is
the substance of the claim itself and constitutes a distinct
debt. Counsel cite in support 23 Cyc. p. 1111, and *Butler
v. Rockwell,* 17 Colo. 290, at page 295, 29 Pac. 458, 17 L.
R. A. 611. The citation from Cyc., stating that as a gen-
eral rule the recovery of a judgment creates a new debt or
liability, distinct from the original claim or demand, re-
lates, as the title of the quotation shows, to merger of the
judgment as a bar; that is, the reference is to the remedy,
and that the original cause of action by virtue of the judg-
ment had merged into the judgment and, therefore, any ac-
tion or remedy by the holder of the judgment must be
brought thereon and not upon the original debt. The cita-
tion from *Butler v. Rockwell,* wherein the opinion states
that the original contract or cause of action becomes
merged in the judgment and the judgment constitutes a
new and liquidated debt, was made with reference to the
fact in that case, as shown by the opinion, that the original
contract or claim was merged in the judgment in so far
as concerns the rate of interest which the judgment bears.
In that case it was held that the indebtedness and the lia-
bility for interest thereon as provided by statute at the
date of the judgment are obligations upon the debtor until
paid and that it was not in the power of the legislature to
alter the rate of interest to which a creditor is entitled
upon his pre-existing judgment. In the Butler Case the
action was upon a former judgment, that is, a judgment
upon a judgment, and at the time of the rendition of the
former judgment the statutory interest upon judgments
was 10 per cent per annum, but subsequent thereto and
prior to the present suit upon the appeal bond, the legisla-
ture adopted an act reducing the rate of interest to 8 per
cent per annum. The district court in entering judgment
on the appeal bond computed interest on the original judg-
ment at the rate of 10 per cent until the new law took ef-
fect, and after that time at the rate of 8 per cent. The

Supreme Court held that this was erroneous and that 10 per cent per annum should have been allowed on the new judgment from the date of its rendition until satisfied. It was in view of such a state of facts that this court held that the original contract or cause of action became merged and that the judgment constituted a new and liquidated debt. This case is not an authority for the plaintiff here, that in all cases and for all purposes the original cause of action is merged in the judgment, and that the judgment becomes a new and different debt. Indeed, in the same volume in the case of *Rockwell v. District Court,* 17 Colo. 118, 29 Pac. 454, 31 Am. St. Rep. 265, the court held that when a judgment has been affirmed by the Supreme Court on appeal, and an action on the appeal bond had been prosecuted to judgment, and the latter judgment is appealed from and pending in the Supreme Court, that the original judgment is not merged in or extinguished by the judgment upon the appeal bond so as to prevent execution upon the original judgment. So that, while in some cases and for some purposes it may be that the recovery of a judgment creates a new debt or liability distinct from the original claim or demand, this rule, as the citation from Cyc. shows, "will not be regarded as creating a new debt, but rather as an old debt in a new form, when justice to the parties requires such a course." In such cases, where the interest of justice demands, the merger will not be permitted. While as a rule any further action in the way of enforcement must be had upon the judgment itself, yet where justice and equity demand it the new judgment will be regarded, not as a new debt but rather as an old debt in a new form. We, therefore, hold as to this proposition, that the original indebtedness evidenced by the water bonds is the same as the indebtedness represented by the refunding bonds, and it was contracted by the municipality while the plaintiff's land was within the corporate limits.

2. The second proposition is that the disconnection statute is so worded that the change of the form of the indebtedness precludes a taxation of the disconnected land

that otherwise was within the contemplation of the statute. Our resolution of the first proposition is decisive against the plaintiff upon the second. What possible bearing the change in the form of the debt would have upon this contention we are unable to conceive. The statute says that the disconnected lands shall not be exempt from taxes for the purposes of paying *any* indebtedness lawfully contracted while the lands are within the limits of the town. The indebtedness now evidenced by the refunding bonds, was contracted while plaintiff's land was within these limits, and it makes no difference that the original form of the debt has been changed into a judgment, then into funding, and then into refunding, bonds.

3. Plaintiff says that there is no authorized agency in the act of 1901 whereby his disconnected land can be subjected to taxation for municipal purposes. True, the act of 1901 is silent with respect thereto. In 1909 (S. L. 1909, p. 312) an addition was made to the 1901 act whereby the corporate authorities were directed to levy a tax upon the disconnected lands at the same rate and for the same purpose as upon any other lands within the town. In 1913 (S. L. 1913, chap. 52, p. 154), our General Assembly reenacted the act of 1901, and did not include therein the provision of the 1909 act specifically authorizing the town authorities to make a levy upon disconnected lands. Plaintiff therefore says that this omission leaves no statutory authority for a levy upon disconnected lands, even though the existing refunding debt is the same as the original indebtedness. The argument is unsound. The provision of the 1909 act specifically authorizing the municipal authorities to levy taxes upon disconnected land, added nothing essential that the 1901 act lacked. This disconnected land, for the purpose of taxation to pay the debt contracted while the land was within the limits, still remains as if it was legally within the limits of the town, as it physically always has been, and the municipal authorities are already by the statute vested with complete power and authority, and are furnished with the necessary

machinery, for the levy and collection of all kinds of taxation which it is authorized to create.

4. The refunding bonds were issued by the defendant in pursuance of the authority contained in the refunding statute of 1915, S. L. 1915, chap. 165, p. 470. Section 6 of the act confers upon the town the power to "levy annually a sufficient tax upon all taxable property in the city or town fully to discharge such interest", and also for the ultimate redemption of the refunding bonds. Plaintiff says that this provision on its face confines the municipality in making the levy to the taxable property at the time of the levy within the city or town. This contention has already been answered and we merely repeat that this disconnected land of the plaintiff was at the time of the levy in 1921, and still is, within the limits of the town of Aurora for all purposes of taxation for raising funds with which to pay the debt now represented by the refunding bonds, being the same debt that was contracted before the disconnection took place.

The entire argument of plaintiff, while subtle and adroitly presented, is unsound and inequitable. When the purchasers of the original bond issue acquired the water bonds the statute was, and the bonds so stated, that all the property within the limits of the town was subject to taxation for raising a fund to pay the bonded debt. Even had the General Assembly explicitly enacted in the disconnecting statute that property within the town when the debt was contracted shall, after disconnection, be exempt from taxation for the purpose of paying the bonded debt, the act would be unconstitutional. No such reasoning as underlies the contentions of plaintiff here should be allowed by the courts to effect an exemption from taxation the disconnected lands which are subject thereto under every principle of law and justice. If one landowner could thus free one tract or part of his land within the limits of the town from taxation, why may not every other owner similarly situated do the same? And, if so, what security would a creditor of the town have against the town?

The judgment of the court was wrong, and it is therefore reversed and the district court is directed to set it aside and dismiss the plaintiff's action.