No. 14,526.

BANKERS TRUST COMPANY *v.* INTERNATIONAL TRUST
COMPANY ET AL.
(113 P. [2d] 656)

Decided May 5, 1941.

16

Messrs. DINES, DINES & HOLME, Mr. HAROLD D. ROBERTS, Mr. ROBERT E. MORE, for plaintiff in error.

Mr. FREDERICK SASS, Mr. FRED S. CALDWELL, for defendants in error.

*En Banc.*

MR. JUSTICE KNOUS delivered the opinion of the court.

IN January, 1921, J. N. Hall, herein for convenience designated as plaintiff, now deceased, and for whom the executors of his will have been here substituted as defendants in error, purchased from the Bankers Trust Company, defendant, farm loan notes of the face value of $2,000 of an issue of $75,000, executed by the Park Range Live Stock Company, and which were secured by first mortgage upon certain of its real estate located in Moffat and Routt counties, known as Three Forks and Willow Creek ranches. In the complaint it was alleged that plaintiff was induced to make such purchase by reason of certain false representations made by defendant and contained in a prospectus "circulated among and held out to the investing public generally and to the plaintiff * * * in particular." Concerning the alleged deceptions recited in the prospectus it was alleged specifically: (1) That the statement therein that said $75,000 note issue was a seven and one-half per cent first mortgage loan was untrue in that in fact the loan was at eight per cent, the additional one-half per cent interest having been withheld secretly by and for the benefit of defendant; (2) that the statement that defendant had purchased and was the owner of the entire issue was false and in reality its interest therein was merely that of a money broker; (3) that the statement that 2376 acres of the land mortgaged as security were irrigated hay and grain land of a value of $77.66 an acre, and 406 acres on said ranches were pasture of the value of $11.23 per acre, was false, in that the total irrigated acreage thereof did not exceed 742 acres and the pasture amounted to 2040 acres; (4) that the state-

ment that said ranches had excellent water rights ample to irrigate three-fourths of the entire acreage was a fabrication; that the statement (5) that the maker of said notes had a net worth of $295,000 was a misrepresentation of fact, as were the statements (6) that the endorsers then had a net worth of $350,000, and (7) had excellent credit ratings with the Denver banks. Plaintiff further averred that he did not become cognizant of the falsity and untruthfulness of such statements until in 1934, whereupon, as a result of such discovery of fraud, he elected to rescind his purchase and in 1935 brought this action at law in assumpsit, on a quasi-contract, to recover the price paid for said notes, with interest at eight per cent from January 2, 1921. Pleading that he was the assignee of nineteen other purchasers of such mortgage notes in various amounts, plaintiff joined nineteen additional causes of action therefor in his complaint containing allegations identical with those stated in the first cause of action, except as to the name of the purchaser and the amount invested, and requested relief on such basis.

For a better understanding of the situation, we mention at this point, that in 1924, defaults in interest payments having occurred previously, a majority of the noteholders elected to foreclose the security. The original notes were surrendered to accomplish this purpose and after appropriate proceedings and the issuance of sheriff's deed to the defendant, it, as trustee, issued deposit receipts to former noteholders evidencing their proportionate interest in the foreclosed properties.

Before answering, the defendant generally and specially demurred to the complaint on the ground that the action was barred by certain statutes of limitations and laches. These demurrers were sustained by the trial court. On a writ of error prosecuted by plaintiff, we reversed such judgment of the district court upon the grounds that the periods of limitation under the statutes invoked did not begin to run until either the date of

discovery of the purported fraud or rescission of the contract, both of which were alleged to have been within the period of tolerance and that the defense of laches must be raised by affirmative plea and not by demurrer. *Hall v. Bankers Trust Co.*, 101 Colo. 449, 74 P. (2d) 720. Thereafter, the cause having been duly remanded with directions to overrule demurrers and with permission to plead over, defendant answered: (1) Denying plaintiff's reliance on any representations of defendant and that any of such were false; (2) affirmatively pleading laches; (3) that the action was barred by statutes of limitation; (4) alleged affirmance of the original purchase by plaintiff prior to the filing of this action, and as a (5th) defense it was averred that during the years intervening between the purchase and the institution of this proceeding, the entire situation had changed so completely that the status quo could not be restored and rescission would therefore be inequitable, if possible. Upon the issues thus made a trial was had to a jury and, after plaintiff voluntarily withdrew one of his causes of action, No. 17, for failure of proof, the jury returned verdicts for plaintiff on all the other causes of action in the aggregate amount of $18,500, together with interest which, when computed, amounted to $20,908.70, making a grand total of $39,408.70. Judgment was entered upon these verdicts to review which the cause is brought here by defendant upon writ of error.

Forty-three errors are assigned, which, as counsel for defendant treat them in their arguments, fall into three general classes. In the first group are advanced objections, more or less fundamental in character, going to the sufficiency of the evidence and the right to maintain the action. The second class, by challenging the interest item allowed and the sufficiency of the proof as to several of the separate causes of action, has to do with the amount of the judgment. The third group pertains to alleged error in the conduct of the trial. Since we have concluded that primarily the judgment must be reversed

and the cause remanded for error committed in the admission of certain tax schedules offered by the plaintiff, we will for the moment disregard the categorical order in which the arguments are presented, first assigning our reasons for the disposition made, and then expressing our views upon such other of the questions as appear vital to the future course of the litigation.

■■ One of plaintiff's witnesses while on the stand produced copies made by him of the tax schedules filed in the county assessor's office covering the Three Forks ranch for the years 1933, 1934 and 1935, and, over the objection of defendant, such copies were admitted in evidence for "the purpose of refreshing his [the witness] recollection" as to what the original schedules contained. Thereafter the witness read to the jury from such copies statements as to the number of acres included in such ranch therein classified respectively as irrigated lands, dry farm lands, and grazing lands, as well as the separate values of each class, the valuation of the improvements and the aggregate total thereof. By the same procedure, through the agency of another witness, copies of the tax schedules covering the Three Forks ranch for the years 1921, 1922, 1923 and 1924, and the Willow Creek ranch for 1921 and 1922, were received in evidence and their contents, in the particulars mentioned, made known to the jury. As might be inferred from the circumstance that these tax schedules were introduced by the plaintiff, the total acreage therein classified as "irrigated lands" was considerably less than the number of acres the prospectus represented as being "irrigated hay and grain lands." Plaintiff grounded his right to have the schedules admitted in evidence on the basis that such thus were competent proof of the falsity of the prospectus.

Tax schedules or returns, being statements of the party to be affected under circumstances in which it is incumbent upon him to disclose the truth, ordinarily are regarded as admissions which, when pertinent, may

be received in evidence. 22 C.J., p. 305, §343. Professor Wigmore in his work on evidence (3d ed.), vol. 5, page 556, §1640b, concerning the admissibility of such returns, states: "It is upon this theory that most of the receiving rulings seem to have been made." Consistently with this principle, in *Lesser v. Porter,* 94 Colo. 348, 30 P. (2d) 318, we held that sworn tax schedules wherein the size of a farm was given as sixty acres were sufficient evidence to take a case to the jury on the question of the falsity of a representation that the tract contained ninety acres, allegedly made by the *signer of the schedule* to a purchaser. And in *Beckwith v. Talbot,* 2 Colo. 639, an action for the alleged breach of a contract for running a herd of cattle on shares, a tax schedule made and sworn to by the agent of defendant under the express authority of the latter, giving the number and value of a herd of cattle as the basis for a tax assessment thereon, was held to be admissible in evidence as an admission by the defendant of the value of the herd. In *Ivey v. Cowart,* 124 Ga. 159, 52 S.E. 436, and *McLendon v. Dunlap Hardware Co.,* 3 Ga. App. 206, 59 S.E. 718, cited by plaintiff, tax records were admitted upon this theory. The Texas cases cited adhere to principles peculiar to that jurisdiction. See, annotations, 17 A.L.R. 178, and 84 A.L.R. 1488. However, this "admission" principle, as well as it is established, is not available to plaintiff here as a justification for the reception in evidence of copies of the tax schedules admitted, since not one of them was *signed by the defendant or any one for it.* As a matter of fact, of the nine schedules received in evidence or read to the jury, six were *not* signed by *anyone;* two were signed by the Park Range Live Stock Company and one by L. E. Bryan, not parties to this proceeding or shown to have been agents of defendant.

As we perceive, there was no valid basis presented in this proceeding for the reception of these schedules in evidence as *tax assessment records* prepared by the county assessor. In accord with the general rule, it is

well established in Colorado that the assessed valuation of real property is not evidence of its value for other than tax purposes. *Fort Collins Development Ry. Co. v. France,* 41 Colo. 512, 92 Pac. 953; *Carper v. Risdon,* 19 Colo. App. 530, 76 Pac. 744; *Hildreth v. City of Longmont,* 47 Colo. 79, 105 Pac. 107; *Denver & Rio Grande R. R. Co. v. Heckman,* 45 Colo. 470, 101 Pac. 976; *Johnson & Wimsatt v. Reichelderfer,* 50 F. (2d) 336. See, also, annotations in 17 A.L.R. 170; 84 A.L.R. 1485; 22 C.J., pp. 178, 305, §§122, 343.

In our opinion in *Fort Collins Development Ry. Co. v. France, supra,* in giving the reason for the rule, we said: "It is a notorious fact that the assessment of real property in this state, made by county assessors, affords no criterion whatever of the value of real property." Disclosing the distinction between this principle and the "admission" rule in *Denver & Rio Grande R. R. Co. v. Heckman, supra,* it was remarked: "In this state, the owner of land is required by law to set down in his schedule only a description of his real estate. He does not value the same. Under these circumstances, the valuation placed upon the land by the assessor is not admissible against the owner as evidence of its value." For a number of reasons, we are convinced that the restrictive effect of this rule applies to the situation before us.

The classification of ranch real estate, said by plaintiff to be imposed upon the assessor by section 134, chapter 142, '35 C.S.A., is at the most but one of the steps to be taken in arriving at the assessed tax valuation of the whole property, which is the purpose of the law. The other factor is the per-acre valuation of the land in each of the respective classes. This valuation also is independently determined by the assessor. Since the combined product of these factors, i. e., the assessed tax valuation, is not admissible as evidence of other than tax value, in the light of the reasons stated for the rule in the cases last mentioned, we are unable to under-

stand how the factors fixed by the assessor singly would be competent in any greater degree to establish an accurate factual classification of their type or a true acre-valuation for purposes other than taxation.

Secondly, as we apprehend, the very basis of plaintiff's complaint on this score is that defendant misrepresented the *actual value* of the mortgage security by over-stating the acreage of the more valuable irrigated lands in its prospectus. Thus, notwithstanding the claim that the schedules were offered to prove the falsity of such classification, the result of their reception was to submit to the jury—on what in reality was an issue of value—evidence of a valuation improper for its consideration. That plaintiff anticipated this effect is disclosed, in our view, by the circumstance that in addition to the classification, the witnesses were requested and permitted to read into the record from the schedules the precise figures showing the detailed and aggregate tax valuations, including improvements, for the years mentioned. Further, in our opinion, tax assessment statistics or values for 1933, 1934 and 1935, aside from other considerations affecting their admissibility, were too remote in point of time to be received as evidence of the condition and value of the included land as of the year 1920. See, *Baltimore & O. R. R. Co. v. Kahl,* 124 Md. 299, 92 Atl. 770; *Miller v. Windsor Water Co.,* 148 Pa. 429, 23 Atl. 1132.

We do not think section 12, chapter 142, '35 C.S.A., providing: "The entries made in the county treasurer's books, the assessment rolls and the tax warrants, and the lists of land sold for taxes recorded by said treasurer or by the clerk of the county, or a certified copy thereof, shall be prima facie evidence of all things appearing therein, in all courts and places. [L. '02, p. 44]," is applicable to the situation here presented. In the first place, "tax schedules," the items with which we are here concerned, are not enumerated in the statute, and secondly, the circumstance that the cases of

*Fort Collins Development Ry. Co. v. France, supra,* and *Hildreth v. City of Longmont, supra,* wherein the rejection of the actual "assessment roll" as evidence was upheld, were both decided since section 12, supra, was enacted, discloses that this provision has not been considered as being pertinent in situations analagous to that presented in the case at bar. For Professor Wigmore's views as to the scope of operation of statutes of this character, concerning which it is here unnecessary for us to comment, see, Wigmore on Evidence (3d ed.), vol. 1, page 556, section 1640 (b).

For the various reasons stated we have no hesitancy in concluding that the trial court acted erroneously in admitting the challenged tax schedules. We are, however, somewhat concerned as to whether such error was sufficiently prejudicial to require a reversal of the judgment. To a considerable extent this quandary was provoked by the opposed positive claims of the parties, in their briefs, as to the dearth or abundancy of other evidence supporting the allegation under consideration. By reason of these conflicting contentions we have examined in detail the transcript of evidence contained in the bill of exceptions, including numerous exhibits. We find that plaintiff called but two witnesses to testify concerning their personal knowledge of the character and classification of this land. One, L. L. Knox, who stated he was a real estate broker residing in Denver, first saw the ranches in 1938. He said he had spent but a few hours in examining the Willow Creek ranch of some 900 acres and was at the Three Forks ranch, containing roughly 1700 acres, for about two hours. Conclusions based upon a visit of such limited duration hardly could be expected to be of more than casual import in fixing the number of irrigated acres on the ranches seventeen or eighteen years before. Extraordinary as it may appear, the second witness called by plaintiff was Mr. Robert E. More, one of trial counsel for the *defendant.* While admitting that in pre-

paring for the defense of the case he had been on the ranches for parts of two days, he stated he had no actual knowledge of the acreage classification of either of these places in 1938 or 1921 and possessed no qualifications by reason of which he could express an "expert opinion." At this point, we pause to say, that having been called to testify for *plaintiff*, the court should not have permitted the interrogation of this witness by plaintiff's counsel as if he were under cross-examination as an adverse party. To vindicate the classification of the prospectus, defendant introduced the deposition of the man who made the original appraisal of the lands in 1920. In view of the paucity, as well as the nature, of proof introduced on this question, extraneous of the tax schedules received, we are satisfied the recitals in such schedules must be considered as having furnished the principal tangible evidence supporting plaintiff's contentions on this issue, as a consequence of which their wrongful admission in evidence constituted prejudicial error. Our conclusion in this respect also is induced by the circumstance that the question of the classification of these lands and the resultant value thereof was of vital consideration in resolving the conflicts over the alleged falsity of at least three other challenged statements in the prospectus, viz.: that the ranches had ample water rights; that the makers of the notes had a net worth of $295,000, and that the endorsers had a net worth of $350,000, and our further doubt as to whether the evidence as to the remaining alleged misrepresentations, standing alone, would sustain the recovery.

We now turn to the consideration of such other objections of the defendant as may arise in the event of a new trial and which we believe should be settled in advance thereof.

■■ The complaint alleged that each of plaintiff's assignors had "assigned their claims to plaintiff for a valuable consideration." Upon the production of the

written assignments at the trial it developed that therein such were stated to be "for the purpose of suit." The witness who had gathered the assignments testified that no money was paid for them; that the assignors were contributing their share of the expenses of litigation and would prorate in any resulting recovery. Because of such retention of interest by the assignors and the asserted lack of consideration, defendant moved for dismissal of such causes of action on the ground that plaintiff was not the real party in interest therein. See, Code of Civil Procedure, section 3. The motion was overruled. The court did not err in this ruling. While not the rule in all jurisdictions (see, *Ravenal v. Ingram,* 131 N.C. 549, 42 S.E. 967; *Hoagland v. Van Etten,* 22 Neb. 681, 35 N.W. 869, and *Brown v. Ginn,* 66 O. St. 316, 64 N.E. 123), it has long been established in Colorado that the assignee of a claim may maintain an action thereon as the real party in interest even though there is annexed to the transfer the condition that when the claim is collected the whole or some part of it is to be paid to the assignor. *Gomer v. Stockdale,* 5 Colo. App. 489, 39 Pac. 355. Such an arrangement provides consideration for the assignment. *Bassett v. Inman,* 7 Colo. 270, 3 Pac. 383. See, also, *Walsh v. Allen,* 6 Colo. App. 303, 40 Pac. 473. The corollary basis of this motion to dismiss, grounded upon the contention that since each of the twenty transactions alleged constituted a distinct cause of action, which the twenty noteholders as coplaintiffs might not prosecute in the same suit, that such demands properly could not be joined in a complaint of one of the claimants as plaintiff by assignments from the other nineteen, presented the question of whether there was a misjoinder of causes of action here. The complaint fully alleged the grounds of the separately stated causes of action as well as the assignments of each to the plaintiff. Thus the defect, if such ever existed, was apparent from the complaint itself from the moment it was filed and did not have initial

inception at the time the character of the proof of the assignments was disclosed at trial, as defendant advances. Since the defect, if it was one, appeared upon the face of the complaint, defendant by answering and going to trial on the merits, waived its right to raise this question at the trial or now. *Dubois v. Bowles,* 30 Colo. 44, 69 Pac. 1067; *Sams A.C.C. Co. v. League,* 25 Colo. 129, 54 Pac. 642.

Defendant next contends that by not making a tender prior to the commencement of this proceeding, plaintiff failed to perform an indispensable condition precedent to the bringing of his action at law upon rescission. It is conceded that the plaintiff, although giving written notice of his intention to rescind, neither tendered nor offered the restoration of anything previous to the trial when the "deposit receipts," issued to the former noteholders during the foreclosure, were tendered. As supporting its contention and disclosing the difference in the rules applicable to proceedings in law and equity, as well as reasons therefor, defendant presents the following statement of the author of the note appearing in 105 A.L.R., at page 1004: "It has been generally held to be unnecessary, in order to maintain equitable actions involving the rescission of contracts, to complete the rescission by placing the opposite party in statu quo before bringing suit, the action itself often being for the purpose of effecting the rescission or cancellation of the contract, and the court having power to adjust all matters between the parties. However, in actions at law based upon the rescission of contracts, the general rule is that such rescission must be complete, and the adverse party, whether plaintiff or defendant, placed in statu quo, before the bringing of the action or assertion of the defense." See, also, Restatement of the Law — Contracts, section 480. Since the situation before us is one in which the right of restitution is grounded upon the theory of a quasi-contract the precise pertinency of the foregoing statement to this

controversy might be questioned, but in any event the principles applicable to such seem to be substantially similar. Illustratively, in Restatement of the Law — Restitution, page 259, §65, comment (d), it is said: "In actions at law which are founded on the existence of a cause of action and in which there cannot ordinarily be a conditional judgment, the entire cause of action must exist before suit is brought. Action is maintained only because of the right already accrued to the plaintiff. Hence in situations in which restoration of the consideration is required, an offer to restore is a condition precedent to a cause of action for goods sold and delivered or for money had and received." In any occasion the practical purpose of requiring a party rescinding to restore to the other party everything of value the former has received in the action, is to make it unnecessary for the latter, to whom the restoration should be made, to bring an action to obtain such restoration. 12 Am. Jur., p. 1033, §451. Stated in another way: "The requirement that the other party to the transaction should be placed in his original position exists to prevent enrichment by the rescinding party at the expense of the other. The reason for the rule limits it." Restatement of the Law — Rescission, comment (e), page 260, §65.

Considered in this light under the facts and the state of the record here, we are satisfied the principle announced was not available to defendant. During the progress of the foreclosure proceedings the plaintiff and his assignors delivered the notes originally purchased to defendant and by arrangement between them the latter issued to each a "deposit receipt." When defendant bid in the ranches at the foreclosure sale, the original notes were surrendered and cancelled. In recognition of this predicament the defendant in its answer affirmatively pleaded that plaintiff has not "restored or attempted to restore to defendant any of the notes of Park Range Live Stock Company which were the subject matter of the sales complained of and no restitution of such notes

or any of them could be made by plaintiff or by any court, due to the cancellation and extinguishment of the notes and debts by court decree taken at the express instance of plaintiff and said other note holders." Obviously, defendant could not with propriety demand the restoration of the thing which its pleadings so logically disclosed no longer had legal existence. The "deposit receipts" were defendant's written recognition of the proportionate interest of the former noteholders in the foreclosed security for which a sheriff's deed was issued to the defendant in its name. The receipts were not assignable except by transfer on defendant's books and none such was ever made. As between the parties, as their appellation implies, these instruments were mere receipts and promises and all obligation thereunder on the part of defendant terminated when plaintiff rescinded. Also, the plaintiff pleaded this result in his replication and, of course, would be estopped from ever taking a contrary position. Thus, in our opinion, the trial court made no mistake in refusing to direct a verdict for the defendant upon this point and properly submitted to the jury the question of whether in fact a rescission had been accomplished by plaintiff and his assignors through the steps disclosed by the evidence.

■ We cannot agree with defendant's contention that as a matter of law the evidence established that each and every cause of action was barred by the statute of limitations and laches. Where there is a reliance upon fraud to take a case out of the operation of the statute of limitations, questions as to the time when plaintiff first discovered the fraud, or whether by the exercise of due diligence he could have made the discovery at an earlier date that he had a cause of action, are questions of fact for resolution by a jury. 37 C.J., p. 1255, §785, subdivision (3); *Corbell v. Stengel* (Tex. Civ. App.), 83 S.W. (2d) 1084. Such questions under fitting instructions were rightly submitted to the jury here. The same considerations apply to the question of

laches if, as such, it is available as a defense in an action at law. See, 1 C.J.S., p. 1395, §128.

As showing other error in the refusal of the court to instruct the jury to return verdicts in favor of defendant, the latter claims the evidence discloses conduct of plaintiff and several of his assignors inconsistent with their disaffirmance of the purchase transaction, whereby, it is said, the right to rescind and sue was waived. To invoke this rule of waiver it is essential to establish that the defrauded party with full knowledge, intentionally condoned the fraud, affirmed the contract and abandoned all right to recover damages. 24 Am. Jur., p. 34, §209. Whether fraud has been waived involves questions of fact, particularly the fact of intent. 24 Am. Jur., p. 139, §291. Thus the resolution of this question from the evidence of the conduct of plaintiff and his assignors and their explanation thereof was properly for the jury.

In his complaint plaintiff prayed for restitution of the full amount of the purchase price of the notes, "with interest thereon at the rate of 8% per annum from and after January 2, 1921." The court instructed the jury that in the event they found for plaintiff, "interest at the rate of 7½% per annum from the first day of July, A.D. 1923, to date" should be included in the amount of recovery. By its verdict the jury allowed interest on such basis, and of the $39,408.70, for which judgment was entered, $20,908.70 represents interest so computed.

Stressing the following language in our opinion in *Hall v. Bankers Trust Co., supra,* "It was at the time of such discovery, or of the rescission, that the moneys could for the first time be said to be moneys received for the use of plaintiff; then, and not before, did the duty of repayment arise," defendant's counsel argue that interest may not be allowed for any period antecedent to the time of discovery (1934) or in any event before the date of rescission (February, 1935). Thus, it will be observed that defendant's objection is not pri-

marily a challenge to plaintiff's *right* to recover interest, but it goes to the *period of computation* adopted here. On the other hand plaintiff contends interest should be computed from the time he parted with his money, by virtue of the express terms of section 2, chapter 88, '35 C.S.A. (except for the rate, changed in 1935, identical with section 3778, C.L. 1921, said to be in effect when this transaction occurred), providing, inter alia, that "creditors shall be allowed to receive interest, when there is no agreement as to the rate thereof, * * * on money taken or retained and fraudulently converted to the taker's use from the time of taking." Plaintiff explains the appearance of the date of July 1, 1923, in the instruction, rather than that of January 1, 1921, alleged to be the date of the purchase, by the circumstance that plaintiff had received interest in full on the notes involved to July 1, 1923. It is said that thus the final result is the same as if the interest had been computed from January 1, 1921, and credit given thereon for payment received therefor prior to July 1, 1923. In *Clark v. Giacomini*, 85 Colo. 530, 277 Pac. 306, we held that none of the specifications enumerated in section 3778, supra, could be construed as permitting the recovery of interest in an action for damages for false representations in the sale of stock. In the light of this holding it may be questioned whether the statutory provision upon which plaintiff relies is at all applicable here. See, also, *Keeney v. Angell*, 92 Colo. 213, 19 P. (2d) 215, and *Otis & Co. v. Grimes*, 97 Colo. 219, 48 P. (2d) 788. However, under the legal principles applicable to the case at bar, hereinafter to be mentioned, this question of pertinency need not be determined.

Passing now to an examination of defendant's contention. The decisive question in *Hall v. Bankers Trust Co., supra,* was as to when plaintiff's ex contractu cause of action in assumpsit accrued, and the language of the opinion above quoted was directed to that question and not to the measure of plaintiff's re-

covery. Where, as here, the person who alleges he was defrauded, waives the tort and elects to sue in assumpsit, the amount of the guilty party's gain, i. e., benefit, not the amount of the victim's loss, is the measure of what is recoverable. 24 Am. Jur., p. 52, §224. See, also, Keener on Quasi-Contracts, page 200. A person upon whom is thus imposed the duty to pay the value of a benefit, consisting of a definite sum of money, which he has received, "is also under a duty to pay interest upon such value from the time he committed a breach of duty in failing to make restitution." Restatement of the Law—Restitution, p. 618, §156. "Where restitution is due because of the rescission of a transaction for fraud, * * * there is a breach of the duty of restitution at the time of the transaction." Restatement of the Law—Restitution, page 619, section 156, Comment a. Consistently, courts generally have held that interest should be computed from the date of the taking on the theory that plaintiff's election relates back thereto. *Felder v. Reeth*, 34 F. (2d) 744; *Wolfe v. Shell Pet. Corp.*, 83 F. (2d) 438; *Newton Mfg. Co. v. White*, 53 Ga. 395; contra, *Dougherty v. Chapman*, 29 Mo. App. 233. See, also, Note, Ann. Cas. 1913 D, page 239, and 33 C.J., page 203, §60.

Notwithstanding that in this jurisdiction the decisions are uniform in holding that interest is a creature of statute, and in the absence of contract, is recoverable as such only in such cases as are enumerated in the statute (*Denver, etc. R. R. Co. v. Conway*, 8 Colo. 1, 5 Pac. 142; *Denver Co. v. Schafer*, 58 Colo. 376, 147 Pac. 367; *Young v. Kimber*, 44 Colo. 448, 98 Pac. 1132, 28 L.R.A. [N.S.] 626, and other cases cited in *Clark v. Giacomini, supra*, p. 536), the courts of this state, even when interest is not recoverable under the statute, by distinguishing between interest as such, and interest as damages, many times have allowed the equivalent of interest in the way of damages for the tortuous taking and detention of money or property. *Brown v. First*

*Nat. Bank,* 49 Colo. 393, 113 Pac. 483; *Mansfield v. Harris,* 79 Colo. 164, 244 Pac. 474; *Omaha, etc. Co. v. Tabor,* 13 Colo. 41, 21 Pac. 925; *Mayo v. Wahlgreen,* 9 Colo. App. 506, 50 Pac. 40; *United States Home Co. v. O'Connor,* 48 Colo. 354, 110 Pac. 74, and *Beckwith v. Talbot,* 2 Colo. 639. In the case of *New Dunderberg Min. Co. v. Old,* 97 Fed. 150, which involved a conversion of ore, and which arose in the District of Colorado, Judge Sanborn of the Eighth Circuit, after an extensive review of the authorities, including particularly those of Colorado, said: "A statute giving express authority therefor is not indispensable to the recovery of interest for the wrongful detention of money or of the value of converted property, and where no such statute exists a reasonable rate of interest conforming to the custom of the locality will be given by way of damages. *Young v. Godbe,* 15 Wall. 562; *Beckwith v. Talbot,* 2 Colo. 639, 650. When interest is recoverable as damages, the result is the same, whether it is given under the one or the other name, and hence it is error without prejudice that it is allowed as interest when it should have been allowed as damages." See, also, *Cooper v. Hill,* 94 Fed. 582. It is to be noted in passing that in the New Dunderberg case, it was held that since it was immaterial whether the interest was awarded as such or as damages, it was equally immaterial whether it was demanded in the prayer of the complaint as the one or the other. See, also, Sutherland on Damages (4th ed.), vol. 1, page 940, and 33 C.J., page 257, section 188.

 For the reasons stated we are of the opinion that the period for which interest was to be computed and allowed was properly fixed by the questioned instruction. It does not appear why the rate for computation was fixed at seven and one-half per cent per annum by the instruction but, conjecturally, it might be inferred that the court was of the opinion that such was the *loss of the plaintiff* by reason of the fact that the notes purchased provided for that rate. If this was

its theory the instruction in that respect was erroneous, since, as we have mentioned, the basis of the recovery was the *benefit to defendant.* In the absence of proof as to the rate which would produce an amount equal to such benefit, the statutory legal rate should be adopted. *Beckwith v. Talbot, supra; New Dunderberg Min. Co. v. Old, supra.* In 1921 the legal rate of interest, where there was no agreement between the parties, was eight per cent. C.L. 1921, §3777. By the Laws of 1935, page 586, section 1, that rate was reduced to six per cent, but the amendatory act would not operate retrospectively to affect a pre-existing transaction. See, *Salazar v. Taylor,* 18 Colo. 538, 33 Pac. 369; *Butler v. Rockwell,* 17 Colo. 290, 29 Pac. 458; 17 L.R.A. 611; *Aurora v. Watkins,* 77 Colo. 234, 236 Pac. 556, and 33 C.J., page 217, section 91. Further proceedings, if any, should be in accordance with these observations.

▇ Defendant further contends that by alleged waivers of the character hereinbefore mentioned, prior discoveries of fraud or insufficiency of proof, the court should have sustained defendant's motion for directed verdicts on thirteen of the nineteen separate causes of action. The proof offered in support of causes of action numbers 2, 5, 8, 10, 11 and 13, by reason of general ambiguity, uncertainty and similar deficiencies, was not very satisfactory in character, and in some instances may even have approached a state of insufficiency; however, in view of our reversal of the judgment in its entirety and the remanding of the cause for further proceedings, in which, if had, further evidence may be produced, we deem it unnecessary to comment further on this subject other than to observe that in the event of a new trial, the court, as well as counsel for plaintiff, should bear in mind that mere proof of the purchase of a note without a showing of reliance upon the representations contained in the prospectus, will not sustain the allegations of the complaint.

Defendant assigns error to the giving of seven of the sixteen instructions submitted to the jury and upon the refusal to give ten instructions tendered by its counsel. There has been a disposition of some of the legal propositions involved in these assignments by our conclusions hereinabove expressed, and in the event of a new trial the instructions should be consistent therewith; otherwise, while not approving the precise form of the instructions—which contain a number of abstract legal propositions of doubtful applicability to the issues—as models for use in a future trial, we find no prejudicial error therein affecting the rights of defendant, nor did such result attain from the refusal of the instructions tendered by it.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with the conclusions herein expressed.

MR. JUSTICE HILLIARD not participating.