# Miller *v.* Windsor Water Co., Appellant.

*Water companies—Act of April 29, 1874—Appropriation of a stream.*

The act of April 29, 1874, section 34, P. L. 93, authorizing water companies incorporated under the provisions of the act to appropriate to their use the waters of a stream, contemplates a single taking and one assessment of damages. In an issue framed on an appeal from an award by viewers of damages for such taking, and where the pleadings in conformity with the act rest upon a bond filed by defendant company, which shows that a permanent appropriation of the entire stream was intended evidence on defendant's part that the water of the stream was not entirely exhausted, but sufficient remained for plaintiff's uses, is immaterial.

*Water companies—Measure of damages for property taken.*

In cases of such taking, the measure of damages is the difference in value of the whole property before and after the appropriation of the stream. The rule is to inquire what would the entire property unaffected by the appropriation have sold for, and what would it sell for as affected by the appropriation. The difference is the true measure of compensation.

The jury must consider the question of damages without reference to the person of the owner, or the actual state or profits of his business. At the same time they may consider the use to which a property may be put, and if, by reason of its location or use, it may be worth more than if used for other purposes, its market value is governed accordingly.

*Evidence—Assessment for taxation—When admissible.*

Assessments or valuations for taxation are a very unreliable measure of market value at the time they are made. Their relation to the true value of the property is known to vary greatly in different counties.

While a recent assessment of this nature would have been admissible in evidence, one made eight years before the taking of the property of which the value was in dispute was properly rejected by the court, considering that in addition to the unreliability of such assessments as a measure of value the one offered was too remote in point of time.

*Practice—Motion to strike out testimony—Assignment of error.*

Where a portion only of a witness's testimony is objectionable, a motion to strike out the testimony of the witness, without specifying the objectionable portion, was properly rejected by the trial judge.

An assignment of error to such ruling of the court which recites only

that portion of the witness's testimony to which objection is taken, is improper, since it fails to conform to the motion in the court below, which was to strike out all of the testimony.

Argued March 2, 1892.    Appeal, No. 263, Jan. T., 1892, by defendant, from judgment of C. P. Berks Co., May T., 1890, No. 95, on verdict for plaintiff, George S. Miller.    Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Issue formed on appeal from viewers assessing damages for the taking of property by defendant, a water company, under the act of April 29, 1874.

At the trial before ERMENTROUT, P. J., the plaintiff, George S. Miller, being under cross-examination, was asked:

" Mr. Rourke: Q. State whether or not you were assessor of Windsor township in 1882?   A. I was an assessor, but I do not just remember the time.

" Q. State whether or not, at the time you were an assessor of Windsor township, you assessed that property, the property in question, with all the buildings thereon erected immediately prior to the appropriation of this property, and as they now stand, at the sum of $2,860?

" Mr. Ruhl: That is objected to, because the time is too remote from the time the injury was done, being eight years; it is immaterial and irrelevant.

" Mr. Rourke: The witness having testified or admitted that he was the assessor of Windsor township, but being uncertain as to the time when he was assessor, this book being the book containing the triennial assessment for the township of Windsor for the year of 1882, and subscribed by the witness on the stand as such assessor, is shown and produced to the witness for the purpose of having him identify the book in question, and the fact that he made the assessment of his own as well as of the property in general in the township of Windsor for the year 1882.   This is to be followed by proof showing the amount of the assessments as made by the witness himself of his own property; to be followed, also, by the triennial assessments of 1885 and 1888, showing what the triennial assessments of the said property of the witness on the stand was fixed at during the said triennial years in the said township; and, furthermore, to show that the assessment in the year 1882 was $2,860, in 1885, $2,860, and in 1888, $2,860.

" Mr. Ruhl: Objected to; first, it is too remote from the time of the appropriation of the stream of water by the defendant company; the damages are to be assessed as of the time of taking; second, the whole offer is immaterial.

" The Court: Objection sustained; exception for defendant." [1]

Albert K. Rentschler, witness for plaintiff, having testified as to the value of the property and the amount of the damage, which he fixed at nine or ten thousand dollars, was asked on cross-examination how he arrived at these figures, and he stated that it was by estimating the depreciation resulting from the fact that the property could no longer be used as a mill property, and would be available only as farm land. So much of the bill of exceptions as was quoted in the assignment of error was as follows:

" By Mr. Rourke: Q. Will you state whether or not mill properties, during the last two or three years, have depreciated in value?   A. I guess a good custom mill has not.

" Q. I cannot ask you as to a custom mill or a merchant mill. Will you state whether or not, during the last two or three years, mill property has depreciated in value or not? Can you answer that?   A. I did not buy any or sell any.

" Q. You do not know the market value of such properties? A. I do not know it as well as I do farm properties.

" Q. State whether or not you did know the market value of such properties on or about April, 1890?   A. I guess about as near as a farmer knows.

" Q. That is not responsive to my question. Have you a general knowledge as to the value of mill properties?   A. I guess I have.

" Q. You guess you have?   A. Yes, sir.

" Q. Do you know whether you have or not?   A. Well, I can give it in such a way, if I am allowed to give it in such a way; if I would go to buy a mill I would not buy one at all without water power; I would not have any at all.

" Q. What do you say the difference was in the market value of this property?   A. Between $9,000 and $10,000.

" Q. How do you arrive at that?   A. Well, about in that way, that it brings just so much less in by the toll that is charged for grinding during the year.

" Q. You base your estimate solely upon what can be realized from the gristmill and sawmill ? You estimate it upon profits solely ? That is the way you make up your estimate of the damages ? State whether or not your estimate is not made up solely from your idea of the profits derived from the gristmill and his sawmill, and from nothing else that you know of ? A. Well, if it would not bring anything in then it would be worth nothing.

" Q. It is solely from the profits that can be realized out of the business of the sawmill and the gristmill that you say the damages are $9,000 or $10,000 ? Is not that so ? A. Well, yes; if there is no water you cannot do any business except on the 25 acres of land.

" Q. In that way you say the damages are $9,000 or $10,000, because of the water power, on account of the profits realized ? A. According to my judgment, I guess, it would bring that much less if it was put in the market.

" Q. That is, that much less by way of profits ? A. Yes.

" Mr. Rourke : The defendant now moves that the testimony of this witness be stricken out.

" By Mr. Ruhl: Q. What you mean to say is this—that when the water is away it is no longer a mill property ? A. No, sir.

" Q. You base your estimate of the difference in market value because it has lost its character as a mill property and not simply as a farm ? A. Yes, sir, the water power is the value of a mill ; if that is away there is no value at all.

" Q. And it is the water power of the mill and not the profits that you base your estimate on ? A. It is not worth more than the 25 acres as a farm ; that is all the value that is there.

" Mr. Rourke : I now renew the motion to strike out the testimony of this witness.

" The Court: Motion overruled; exception for defendant." [2]

On redirect examination, plaintiff's counsel asked James Lenhart, one of the plaintiff's witnesses, the following question :

" By Mr. Ruhl: Q. Then the loss of the water power, you say, is more than the interest on the money that you fix as the damages ?

" Objected to; objection overruled; exception for defendant.

" A. That is what I mean." [3]

Elias Sunday, one of the plaintiff's witnesses, being on the stand, under cross-examination, was asked as follows:

" By Mr. Rourke: Q. Do you know anything about the reservoir and the water works constructed by the defendant in this case?

" Mr. Ruhl: That is objected to as not cross-examination.

" Mr. Rourke: The object of this inquiry is to see whether the witness knows anything about the quantity or volume of water taken. The defendant proposes to show furthermore that since this water company is in operation, and since it has supplied the town of Hamburg, that the property of the plaintiff in this case has had a sufficient supply of water to run the two mills and to supply his family and his farm for all the purposes it had before.

" Mr. Ruhl: The plaintiff further objects that the act contemplates but one taking and one action, and the exercise of their rights under that act is an extinguishment of their rights, and when once exercised it has been exhausted; furthermore, that under the pleadings in the case this is a permanent appropriation of the whole stream; it is immaterial and irrelevant.

" The Court: Under the pleadings in this case, if it appears by the petition filed and also the appointment of the jury to view the premises that they were appointed to view and assess for a permanent appropriation of this whole stream, as the pleadings stand, the jury must assess for the permanent appropriation of this stream, and it is immaterial what water works may or may not have been established; the pleadings show that the defendant would have a right to the whole of the stream. You may inquire of this witness anything that will determine either the quantity or the quality or the value of the land or water taken, but the present capacity of the water works, in the judgment of the court, will have nothing to do with this subject. We will, therefore, sustain this objection and give the defendant an exception." [4]

The defendant submitted two points which appear, with the answers thereto, in the opinion of the Supreme Court.

The court charged the jury as follows:

" Under the law in this case corporations are permitted to

appropriate streams of water and property for purposes men-
tioned in the law.   The constitution says that when they take
such property they must make just compensation for all prop-
erty taken, injured or destroyed.   The act of 1874, under which
this corporation defendant is chartered, requires that there shall
be assessed compensation for the damages done or likely to be
done to or sustained by any owner of the water, stream, land
or material which the corporation may enter upon, use and
take away.   Whenever a corporation appropriates a stream, a
petition is presented to the court, viewers are appointed, who
determine the quantity, quality or value of the land, stream or
property taken and occupied, and then they make their report.
Both parties have a right of appeal, and when they appeal to
the court, an issue is formed and a jury trial awarded.

" You are now sitting as a jury to determine what is the just
and proper compensation to be paid to the owner for the injury
which is alleged was done to him by the permanent appropria-
tion of this particular stream in Windsor township.

" The law is very clear as to the measure of damages."

After stating and answering defendant's points (as stated in
the opinion of the Supreme Court) he continued :

" You will observe, gentlemen, under the law, that the true
measure of damages has been defined to be the difference in
the market value of the property as it stood before the stream
was taken away and the market value after the stream was
taken away.

" What do we mean by market value?   The law defines
clearly what market value is.   Market value does not mean
simply the price that land will bring when put up at public
auction upon a forced sale.  · A fair public or private sale may
be some test of market value, but it is not the only test.   The
market value is estimated upon a fair and square consideration
of the location of the land, its nature and character, its buildings,
the extent and condition of its improvements, its quantity, its
productive qualities, the uses to which it may be applied, taken
in connection with the general selling price of land in the
neighborhood at the time.   All these things enter into considera-
tion of its market value.   In other words, the law aims, in as-
certaining market value, at fixing a price which, taking all
those different things into consideration, the location, surround-

ings, buildings, its uses and the productive qualities of the land, the judgment of well informed and reasonable men will approve. That price the law regards as market value of the land.

" In considering that subject you will take into consideration the location of this tract of land with reference to the stream of water by which the mill on the land is supplied with water, its buildings and the uses to which they put them.   All those things enter into the consideration of the market value.   In considering the evidence, the jury will pass upon the whole of it.   It is your duty to patiently consider all the evidence that bears properly upon this subject of market value.

" When the jury come to pass upon the reliability of the witnesses who testified as to the market value, they will consider the means of knowledge which the particular witness may have as to the facts in the case and as to the market value of this particular property.   They will inquire, did the parties know this land?   Were they acquainted with the mill, the house and barn, the water, its power, its quantity, its value? Have they a general knowledge of the value of land in that neighborhood, because the value of the testimony of a witness is to be tested by the extent of his knowledge, and it is by the extent of his knowledge that the jury can pass upon what credit the opinion which the witness expressed may deserve.

" It is not unusual in the trial of cases of this character, that witnesses differ in their estimate of market value, nor is it necessary for the jury to find that any of the witnesses have committed willful, deliberate perjury, or sworn falsely, but it is the duty of the jury to consider fairly and deliberately, and without prejudice, the testimony of the different witnesses that have come before them.   They must reconcile the testimony if they can ; that is, they must see whether this testimony can be properly made to agree.   It is only when it is impossible to reconcile testimony that the jury are warranted in disregarding any of it.   When witnesses are called upon to give their opinion of market value, it may be a perfectly honest opinion which they give.   The difference of opinion may be the result of want of special knowledge.   A witness may not be sufficiently posted upon the subject about which he talks ; he may not know the nature and character of the land, its location, its buildings or water power, its character, its value, its quantity.

So that this difference of opinion may be the result of want of knowledge, and, therefore, it is, that in passing upon the credibility and reliability of the witnesses who have testified in this case, you must consider what means of knowledge has it been shown that the witness possessed. What is the extent of his opinion as to this property, its condition and the general market value of property. In determining that question, you must bring to your aid your good, sound, common sense, in judging of people as they appear upon the stand and as they give their testimony.

"Now, such is the law; such are the rules with regard to market value, and in judging of the credibility and reliability of the witnesses.

"Let me state, then, your duty: First. Ascertain, in the light of the evidence in this case, what was the market value of the plaintiff's property as it stood before this stream was appropriated by the defendant? That is the first inquiry. Having ascertained its market value before, then ascertain its market value after the property had been deprived of the water of this stream, and the difference between the two is the measure of damages, or is the compensation which the law requires this defendant to pay Mr. Miller.

"You will observe that the language of the law is, 'just compensation,' what is right, fair and proper. The plaintiff is to be made whole and no more. That is, he is to be paid for what he lost, namely, the difference in the value of his property caused by the act of the defendant in taking this stream, for whilst the law gives the defendant the right to take it, it also says that he must pay for it precisely what it is worth. Having ascertained this difference in the market value, you may, if you see proper, add to it, as proper damages, interest from the time of taking in 1890, I think April, 1890. Take the difference in the market value, and, if you see proper, add interest and return your verdict in one full amount."

Verdict for plaintiff for $6,380 and judgment thereon. Defendant appealed.

*Errors assigned* were (1–4) the rulings on evidence above indicated, quoting the bills of exceptions; (5) failure to confirm unqualifiedly defendant's second point.

*William J. Rourke, Henry C. G. Reber* with him, for appellant.   The evidence of the assessment should have been admitted, not as conclusive, but to be considered and weighed in connection with the other testimony : Penna. etc. R. R. Co. v. Keller, 20 W. N. 125 ; Smith v. Penna. etc. R. R. Co., 141 Pa. 618.

The rulings of the court complained of in the second, third and fifth assignments of error, are in conflict with the rule laid down by this court that the jury are to value the injury to the property without reference to the person of the owner, or the actual state of his business, and that the market value is not to be fixed by estimating the proceeds or gain that may be realized out of his business : Schuylkill Navigation Co. v. Thoburn, 7 S. & R. 422 ; Pittsburgh v. McCloskey, 110 Pa. 436 ; Reading v. Balthaser, 119 Pa. 472 ; Chambers v. South Chester, 140 Pa. 510 ; Searle v. Lackawanna etc. R. R. Co., 33 Pa. 64 ; Setzler v. P. R. R. Co., 112 Pa. 65 ; Geiger v. Welsh, 1 Rawle, 352 ; Slaymaker v. St. John, 5 Watts, 32 ; Smith v. Thompson, 2 S. & R. 51 ; Tenbrooke v. Jahke, 77 Pa. 396.

The court should have permitted the defendant to show that plaintiff was afforded the same facilities in the matter of running his grist and sawmills, and had a sufficient water supply for his farm and domestic purposes, after the appropriation, in order to enable the jury to put the proper estimate of the difference in market value upon the plaintiff's property.   The defendant should not be held to be estopped by the bond : Walden v. Berry, 48 Pa. 457.

*C. H. Ruhl,* of *Ermentrout & Ruhl, Jeremiah K. Grant* with him, for appellee.—Damages for appropriation of a stream are to be assessed at the time of the appropriation.   Evidence of an assessment for taxation eight years previous to the taking is clearly inadmissible : Schuylkill Navigation Co. v. Thoburn, 7 S. & R. 411 ; Hanover Water Co. v. Ashland Iron Co., 84 Pa. 279 ; Schuylkill River etc. R. R. Co. v. Stocker, 128 Pa. 233 ; Smith v. R. R. Co., 141 Pa. 68.

The testimony of the witness, Rentschler, having been received without objection, the refusal of the court to strike it out is not the subject of a bill of exceptions : Montgomery v. Cunningham, 104 Pa. 349.

OPINION BY MR. JUSTICE STERRETT, April 11, 1892:

This proceeding, in the court below, was for the purpose of determining the compensation to which plaintiff is justly entitled for property taken, injured or destroyed by the company defendant in the exercise of the powers conferred by its charter.

As declared in its bond filed in court, the intention of the company was " to permanently appropriate to its use the waters of a stream, creek or rivulet, . . . . which it has selected for the purpose of introducing into the borough of Hamburg a supply of water, as well as to appropriate property upon which to erect a reservoir, catch-basin, water-mains, etc., and to lay a line of water-pipe or main, reaching from said reservoir, etc., and has surveyed, located and determined upon a course or route for the introduction of said water supply, the erection of a reservoir, catch-basin, distributing-basin, water-main, etc., and the appropriation of said stream, creek or rivulet, running through the property of said George S. Miller and others, and supplying his grist and sawmill with the water wherewith the same was run and operated," etc. Following the language of the bond, the plaintiff, in his petition for the appointment of viewers to assess damages, avers, inter alia, " that the Windsor Water Co. has appropriated permanently to its use the water of said stream or creek, which has its natural course and channel through the tract of land of your petitioner, and diverted it from its natural channel," etc. From the report of the viewers appointed in pursuance of this petition, both parties appealed, and the issue was tried by the jury. On the trial two points for charge were presented by the defendant:

" 1. The measure of damages is the difference in value of the whole property before and after the improvement, that is, before and after the taking and appropriation of the stream in question. The rule is, to inquire what would the entire property, unaffected by the appropriation, have sold for at the time of the appropriation; what would it have sold for as affected by the appropriation; the difference is the true measure of compensation.

" 2. The estimates of plaintiff's witnesses, as to the value of his property, based upon the profits he was making, or the state of his business, or into which such profits or the state of his business entered as an element, must be disregarded by the

jury, and therefore the testimony of the witnesses who testified in that way upon the subject of damages could not be regarded by the jury in making up their verdict."

The first point was affirmed without any qualification, and thus the defendant had the full benefit of his own rule as to the measure of damages.

The second point was answered thus : " The jury must consider the question of damages without reference to the person of the owner or the actual state of profits of his business.   The test is not what he makes, but what is the market value of the land.   As to the market value of the land, the jury will disregard any estimate founded wholly upon those considerations, and they will disregard all estimates in so far as they may have entered into them.   But the jury may consider the use to which a property may be put, and if that property, by reason of its location or the use to which it is put, may be worth more for that particular use than any other, its market value would be governed accordingly."

This answer is the subject of complaint of the 5th specification ; and it may as well be disposed of now, by saying that it is quite as favorable to the defendant as it should have been.   Indeed, the charge, as a whole, is a very clear and adequate presentation of the questions involved in the issue.

If the jury were mistaken as to the principles of law governing the case, or as to their proper application to the facts established by the evidence, it was not the fault of the court.   There appears to be no error in the answer to defendant's second point, or in any other portion of the charge.

The 1st specification charges error in excluding defendant's offer to show the assessment of plaintiff's property for taxation in 1882 as some evidence of its market value in 1890, when it was appropriated by defendant.   The bare statement of the proposition is strongly persuasive, if not conclusive, of its want of merit.   At best, such assessments or valuations are a very unreliable measure of market value at the time they are made. As a general rule, they differ so widely from actual market values that no one ever thinks of accepting them as a measure by which to sell or buy.   While in a few counties they are nearly up to the legal standard, in a large majority they are less than one half, and in others less than one third.   Our at-

tention was recently called to a modified form of assessor's oath, in which that official, in ease of his conscience, obligated himself not to assess at more than thirty-three per cent of actual value.

If the offer had been to prove a recent assessment of plaintiff's property, it, doubtless, would have been entertained; but when, in addition to the unreliability of such assessments as a measure of value, the court was asked to receive evidence of one made eight years before the property in question was taken under the right of eminent domain, it is not at all surprising that the offer was rejected as too remote in point of time.

There was no error in refusing to strike out the testimony of Albert K. Rentschler. Portions of it, at least, were unobjectionable. Moreover, the error is improperly assigned, in that it recites only a part of the witness's testimony. As shown by the record, the motion was to strike out all, and not merely the portion of his testimony that is recited in the specification. If the court had been asked to strike out a specified portion of it, a different question would have been presented. But no such request was made. The court was asked "to strike out the testimony of this witness;" and that must be taken to mean the whole of his testimony. To have done that would have been error.

The 3d specification is not sustained. There does not appear to have been any error in permitting the witness to answer the question recited in the specification.

Nor was there any error in refusing defendant's offer to prove matters specified in the 4th assignment, viz.: "that since the water company is in operation, and since it has supplied the town of Hamburg, the property of plaintiff has had a sufficient supply of water to run the two mills, and to supply his family and his farm for all the purposes it had before," etc. This was objected to as immaterial and irrelevant, not only because the act of 1874, under which the company was incorporated, contemplates only a single taking and one assessment of damages, but mainly on the ground that the pleadings in the case show a permanent appropriation of the entire stream. As we have already seen, the bond filed by the company recites its determination to permanently appropriate to its use the waters of the stream or creek flowing through plaintiff's property

" and supplying his grist and sawmill with water, wherewith the same were run and operated, together with the alleged easement or right on and along either side of said creek," etc. There is nothing in the appropriation proceedings to show any reservation to plaintiff of any water-right or privilege whatever, nor any intention of the defendant to restrict its claim in any manner. On the contrary, the pleadings clearly show a permanent appropriation, with full power and authority to divert the stream from its ordinary channel, and use all the water in such manner and at such times as the company may see fit. The taking is absolute and unequivocal. The viewers were appointed to assess the plaintiff's damages caused thereby; and the issue the jury was impaneled to try was precisely the same. The learned judge was therefore clearly right in holding that it is immaterial what waterworks the company may or may not have established. The pleadings show that it has taken and appropriated to its own use the entire stream; and hence the present or prospective capacity of the company's works has nothing to do with the question. The court was clearly right in excluding the evidence.

The case was tried with marked ability and care, and we find nothing in the record that would justify a reversal of the judgment.

Judgment affirmed.