Hencken et ux. *v.* Bethlehem Municipal Water
Authority, Appellant.

Argued January 12, 1950. Before MAXEY, C. J., DREW, LINN, STERN, STEARNE and JONES, JJ.

*Daniel L. McCarthy*, with him *Alan S. Loose*, for appellant.

*George A. Shutack*, with him *Russell L. Mervine*, for appellees.

OPINION BY MR. JUSTICE LINN, March 20, 1950:

This appeal is by the defendant, Bethlehem Municipal Water Authority, from a judgment in eminent domain proceedings for the condemnation of part of a large tract of land, owned by plaintiffs, in Towamensing Township, Carbon County, for the construction of defendant's Wild Creek Dam. On June 8, 1939, appellant adopted a resolution appropriating plaintiff's land "for the purpose of erecting and constructing [a] dam, lay pipe lines, and constructing and erecting other buildings for the operation of a water system . . ." and filed a condemnation bond which was approved by the court.[1] The area taken contained 40 acres and 42 perches, part of plaintiff's larger tract of 47 acres. Plaintiffs' dwelling house and outbuildings were not taken. On June 8,

---

[1] This procedure is authorized by the Act of May 2, 1945, P. L. 382, section 11, as amended by Act of June 12, 1947, sec. 1, P. L. 571, 53 PS 2900z-12.

1945, a jury of view was appointed which filed a report on August 28, 1946, awarding $27,500 to the plaintiffs. The Authority excepted on the ground that the viewers "did not file a report within three months of December 5, 1945, as required by Section 2828 of The Third Class City Law of June 23, 1931, P. L. 932 [53 PS 12198-2828]."[2] The court sustained the exception and set aside the report on November 8, 1946.

On April 15, 1947, following an abortive appeal to this Court, and pursuant to a petition for viewers, the court again appointed a jury of view. This jury reported on December 16, 1947, and awarded $26,500. Both parties appealed from this award. After issue framed, the case was tried in October, 1948, resulting in a verdict of $42,500 in favor of plaintiffs. The Authority now appeals from judgment on the verdict and contends that (1) the statute of limitations prevents recovery; (2) there was error in rulings during the examination of expert witnesses. No objection is made to the charge of the court except to the refusal to charge as requested in appellant's 25th point for charge, a matter not now requiring discussion.

1. The defense of the statute of limitations is based on failure of the first viewers to report in the term of court during which they were ordered to report or the omission to obtain an order extending the time for the report. When that report was set aside, six years had elapsed since the Authority entered on the land; because of the expiration of that period, appellant now contends that the petition for the viewers appointed on April 15, 1947, was filed too late.

---

[2] "Section 2828. . . . the viewers shall report to the court, within three months from the date of their appointment, unless the time for so doing shall be extended by the court, showing the damages and benefits allowed and assessed in each case, and file therewith a plan showing the improvement, the properties taken, injured or destroyed, and properties benefited."

Section 2828 of The Third Class City Law directed that "the viewers shall report to the court, within three months from the date of their appointment, unless the time for so doing shall be extended. . . ." As the first report was not filed in accord with the Act, the court rightly sustained the exceptions and set aside the report. The plaintiffs had appealed to the common pleas from the report of the viewers and to this Court from the order sustaining the exceptions. The appeal to this Court was premature and failed because the order was interlocutory. When the record was returned from this Court to the court below, plaintiffs filed the petition for viewers who made the second report.

Section 2820 of The Third Class City Law (53 PS 12198-2820) provides, "The viewers provided for in the preceding section may be appointed before or at any time within six years after the entry, taking, appropriation or injury, or the passage of an ordinance providing for the same, or the completion of any public improvement." This second petition for viewers was filed within six years of the completion of the public improvement and was therefore in time, making it unnecessary now to discuss the effect of the order sustaining the exceptions to the first report of the board of viewers.

2. Appellant contends that it was harmfully prejudiced by the court's refusal to strike out the evidence of three expert witnesses called by the plaintiffs, William L. Lance, Frank R. Diehl and Robert Getz. The court justified its action by noting that the motions to strike out did not distinguish the evidence said to be objectionable from the evidence which was clearly admissible. This was of course an adequate reason for refusing to grant appellant's motion: *Miller v. Windsor Water Co.*, 148 Pa. 429, 440, 23 A. 1132 (1892) ; *Wadsworth v. Manufacturer's Water Co.*, 256 Pa. 106, 116, 100 A. 577 (1917) ; *Gerhart v. East Coast Coach Co.*, 310 Pa. 535, 538, 166 A. 564 (1933). During the exami-

nation of Mr. Lance for the purpose of showing that he was qualified to give an expert opinion on the issue involved, he said that he "took into consideration sales of lands for comparable reservoirs in other parts of the state farther away," and referred to reservoirs at or near Johnstown, Altoona and Ashland and included transactions as early as 1876, of which he heard in 1920; and some in 1906, of which he heard in 1927. We think this evidence should have been excluded but, in the circumstances, we do not now regard the error as reversible. The question, as we have said, arose during the preliminary examination for qualification. Whether in such examination a witness has shown himself apparently qualified to testify, is, in the first instance, a question for the discretion of the trial judge. In *Stevenson v. Ebervale Coal Co.*, 203 Pa. 316, 331, 52 A. 201 (1902), we quoted as follows from *Delaware etc. Steam Towboat Co. v. Starrs*, 69 Pa. 36, 41 (1871), "if the court should think they are prima facie qualified, it will then be for the jury to decide whether any, and, if any, what weight is to be given to their testimony. It is a matter very much within the discretion of the court below, and if it appears that the witnesses offered, had any claim to the character of experts, the court will not reverse on the ground that their experience was not sufficiently special." See *Davis v. Southern Surety Co.*, 302 Pa. 21, 26, 153 A. 119 (1930) ; 2 Wigmore, Evidence, 3rd ed., section 561. The objection made at the time, and which was overruled, was as follows: "We object to the competency of the witness to form an opinion as to this property unless it is based entirely on the selling prices or asking prices of similar land in the vicinity of the property in question." That objection was properly overruled because it ignored familiar elements proper for consideration apart from "the selling prices or asking prices of similar land in the vicinity. . . ."

Section 2817 of The Third Class City Law (53 PS 12198-2817) provides: "Competency of Evidence as to Market Value of Property." "In all proceedings arising from the exercise of the right of eminent domain, it shall be competent for all witnesses called, when duly qualified, to state their opinion as to the market value of the property before the exercise of the right of eminent domain and as unaffected by it, and its market value immediately after the exercise of the right of eminent domain and as affected thereby.

"(a) To state, in detail and costs, all the elements of benefit or damage which they have taken into consideration in arriving at their opinion;

"(b) In arriving at their opinion as to the market value immediately after the exercise of the right of eminent domain, to add to their opinion of the market value before such exercise, the cost or value of all the elements of benefit or advantage, and to deduct therefrom all disadvantage or damage in order to arrive at the market value after such exercise of the right of eminent domain and as affected thereby; . . ."

Both the plaintiffs testified and, in addition, they called their son. The wife and the son testified generally to physical conditions but put no value on the property before or after. We are not impressed by appellant's criticism of their testimony. They were competent to describe the property on which they lived and if, as appellant suggests, their evidence stressed a sentimental side, it was a mere incident in the transaction.

The husband plaintiff fixed the value of the property before the taking at $55,000 and the value of what remained afterward at $2,000. He was a farmer who lived on the property and worked it. Appellant objects that he was incompetent to give an opinion. It is well settled in this Commonwealth that an owner of property, taken in the exercise of the right of eminent domain, may

testify generally and give his opinion, for what it may be worth, of the value of his property. In *Westinghouse Air Brake Co. v. Pittsburgh*, 316 Pa. 372, 376-7, 176 A. 13 (1934), the rule was stated "An owner through personal knowledge of his property, with a reasonable opportunity to observe its area, the uses to which it may be put, the extent and condition of any improvements thereon, possesses sufficient knowledge from which to form an opinion as to the value of his own property. Such an owner may not be familiar with the general prices of property in the neighborhood, nor may he possess all the qualifications that would be required of others who testify as to value. Nevertheless, because he is an owner with a general knowledge of his property, he is a competent witness: [citing *Marowitz v. Pitts. & Connelsville R. R. Co.*, 216 Pa. 535, 537, 65 A. 1097 (1907) ; *Chauvin v. Superior Fire Ins. Co.*, 283 Pa. 397, 401, 129 A. 326 (1925) ; *Whitekettle v. N. Y. Underwriters Ins. Co.*, 293 Pa. 385, 388, 143 A. 129 (1928) ; *Barron's Use v. United Ry. Co.*, 93 Pa. Superior Ct. 555, 559 (1928) ]."

The expert witness, Lance, lived about 25 miles from the property. He was an engineer with many years experience concerning water companies and water storage. He testified that he was generally familiar with plaintiff's land since as early as 1933. While he had neither bought nor sold any land in the county, he had informed himself of values by inquiry of individuals and of areas that had been sold, by examination of records. He testified that he made an examination of the watershed in the vicinity of the Wild Creek[3] area (which included plaintiffs' farm) containing about 22.4 square miles. He was familiar with the daily flow of water; with the demand for property in the vicinity for reservoir and recreational purposes; he stated that in his

---

[3] Wild Creek flowed through plaintiffs' farm.

opinion the market value of the property before the taking was $52,500 and afterwards $2,500.

The witness, Getz, was not an engineer with Lance's experience. He was 66 years old and had lived in Carbon County all his life in a township adjoining that in which plaintiffs' land was located and about 6 miles from it. He owned about 3700 acres of land in adjoining townships. He gave his occupation as lumbering and farming. He had sold real estate and had acted as an appraiser of the value of real estate. He testified that he was familiar with the general selling prices of land in Towamensing Township (where plaintiffs' land was situated); that he knew plaintiffs' property and the improvements on it; that he was familiar with the water situation in that watershed. He stated that in his opinion the market value of the property before the appropriation was $45,000 and afterward $3,000. In considering his evidence we note the court's reference to this witness in the opinion refusing the new trial. In part, the court said, "While the Defendant seeks a new trial on the refusal of the Court to strike out the testimony of Robert Getz, the Court is of the opinion that Mr. Getz was one of the best qualified witnesses presented in this case to testify as to values. Mr. Getz is a farmer residing in the vicinity of the Plaintiff's property. He is a substantial citizen of the highest integrity and standing in this County whose reputation for veracity and sound judgment is widely known throughout the County, and is a person whom prospective purchasers would probably consult concerning values of premises in Lower Towamensing Township. He was aware of the adaptability of the premises for recreational purposes, farming purposes, poultry raising, turkey raising, the development of water power and for the raising of asparagus." It would of course have been error to grant appellant's motion to strike out the evidence of this witness.

The third witness, Mr. Diehl, was 61 years of age, lived in Carbon County and said that for 15 years he had been engaged in the real estate business in Lehighton, which is about 10 miles from plaintiffs' property. He gave his general experience and testified that the market value of the property before the taking was $49,000 and afterward $4,000. Appellant's brief makes no particular objection to his testimony.

The defendant called a number of witnesses; our reading of their evidence gives the impression that they were not very familiar with the issues concerning which they were testifying. One of them, Mr. Strohl, who was employed only three days before the trial, testified that he had not familiarized himself with the property; that the market value before the taking was "from $11,000 to $12,000 and afterwards $7,000." Mr. Ziegenfus gave the market value before as $6,500 and afterward as $3,500. Mr. Smith gave the market value before as $13,050 and afterward as $6,000.

The appellant repeats in this Court the contention made below that the verdict was excessive. In considering this point, the trial judge thought that interest from the date of the taking, June, 1939, on the amount awarded by the jury of view, $26,500, added to that sum, would about make the verdict. While the verdict seems high if considered only with the evidence of the experts produced by the defendant, it does not seem so clearly excessive when the evidence given by defendant's witnesses and their qualifications are considered alongside the evidence and qualifications of plaintiff's witnesses, who exhibited more comprehensive knowledge of the property and its relations to the surrounding properties in the watershed. We are not prepared to say the trial judge erred in not reducing the verdict.

Judgment affirmed.