**WATSONTOWN BRICK COMPANY**
et al., Plaintiffs,

v.

**HERCULES POWDER COMPANY,**
Defendant.

Civ. A. No. 7276.

United States District Court
M. D. Pennsylvania.

March 10, 1967.

Candor, Youngman, Gibson & Gault, Williamsport, Pa., for plaintiffs.

Furst, McCormick, Muir, Lynn & Reeder, Williamsport, Pa., for defendant.

OPINION

FOLLMER, District Judge.

This case was tried to a jury in June, 1965, on the narrow issue of liability that defendant had negligently furnished the plaintiff, Watsontown Brick Company (hereafter referred to as "Watsontown"), an incompetent servant to supervise, prepare, and set off a dynamite blast in Watsontown's quarry on September 24, 1959. The jury was unable to reach a verdict and was discharged. Defendant thereafter moved the Court, pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, for judgment in accordance with its motion for a directed verdict at the close of all the evidence. This motion was denied by the Court in its opinion dated April 18, 1966.

Thereafter plaintiffs moved to amend their complaint by adding the word "inexperienced" in alleging that defendant was negligent in furnishing Watsontown an incompetent servant and to include a claim for detention damages in their demand for relief. Over defendant's objection, the motion to amend was granted, defendant filed an amended answer to the amended complaint, and the case was retried to a jury in June, 1966. The jury in the second trial returned a verdict in favor of the plaintiffs and against the defendant for $144,109.18, and by its Order dated June 28, 1966, the Court directed entry of judgment thereon.

Defendant, having moved for a directed verdict at the close of all the evidence and its motion having been denied, timely moved the Court for judgment n. o. v. pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, or, in the alternative, for a new trial under Rules 50(b) and 59 of the Federal Rules of Civil Procedure. These last mentioned motions are now before the Court for disposition.

Defendant submits as the questions involved the following:

"1. Was there any evidence of Parsons' incompetence and inexperience

legally sufficient to permit a jury to pass on that question?

"2. Assuming there was sufficient evidence to justify the jury's finding that Parsons was incompetent and inexperienced, was there any legally sufficient evidence to support the jury's finding that the defendant knew or should have known that Parsons was incompetent and inexperienced?

"3. Was Parsons negligent and, if so, does that negligence become, as a matter of law, the contributory negligence of Watsontown Brick Company, barring recovery by all the plaintiffs?

"4. Do the indemnity provisions of the service agreement, defendant's Exhibit No. 2, bar the plaintiff, Watsontown Brick Company, from recovering anything from defendant and require Watsontown Brick Company to discharge that portion of the verdict awarded to the insurance company plaintiffs?

"5. Was there any evidence of fair market value of the buildings, machinery, and equipment immediately prior to the blast of September 24, 1959?

"6. Was there legally sufficient evidence to permit the jury to award the plaintiff, Watsontown Brick Company, any loss of profits for the fourth quarter in the year 1959?

"7. Was it proper for the Court to submit the question of detention damages to the jury?

"8. Should the prior testimony of John L. Romig have been admitted?"

To Question No. 5, plaintiffs would add:

"If the plaintiff proves the cost of repairs to damaged property, who has the burden of proof as to whether the cost of repairs exceeds the fair market value of the property before it was damaged?"

Plaintiffs offer the following as a counterstatement to Question No. 6:

"Was the evidence legally sufficient to permit the jury to determine the amount of profits lost by the plaintiff as a result of the blast of September 24, 1959?"

The sole liability issue which was tried to the jury in this case is: Was the defendant negligent in furnishing Watsontown an incompetent and inexperienced blaster when defendant knew or should have known that the blaster was incompetent to perform the task undertaken? See Oregon Portland Cement Co. v. E. I. Du Pont De Nemours & Co., 118 F.Supp. 603 (D.C.Ore.1953). The blaster was Charles R. Parsons.

■ In the consideration of the pending motions, having in mind that in this case the jury found for plaintiffs, the Court must assume as established all the facts that plaintiffs' testimony reasonably tends to prove, together with all inferences in plaintiffs' favor which may fairly be drawn therefrom. Wiggins v. City of Philadelphia, 331 F.2d 521, 523 (3d Cir. 1964); Van Sant v. American Express Co., 169 F.2d 355, 365 (3d Cir. 1948); Thomas v. Conemaugh Black Lick Railroad, 133 F.Supp. 533, 538 (W.D. Pa. 1955), aff'd. 234 F.Supp. 429 (3d Cir. 1956); Kowtko v. Delaware and Hudson Railroad Corporation, 131 F. Supp. 95, 98 (M.D.Pa.1955).

The questions involved as to which both plaintiffs and defendant are in substantial agreement will be considered seriatim.

I

"Was there any evidence of Parsons' incompetence and inexperience legally sufficient to permit a jury to pass on that question?"

In its brief, defendant states as follows: "That Parsons did not properly calculate the burden and use the proper powder factor in loading cannot be denied by the Defendant." Defendant then states: "This, however, on the basis of this Record amounted at the most to evidence of Parsons' negligence and not of his lack of competence and experience."

■ In the first place, Parsons got his blasting license under the Grandfather's Clause of the Pennsylvania Blast-

ing Act. He took no examination. From the fact that he was issued a license, he was presumed as a matter of law to be competent. Cf. Piquet et ux. v. Wazelle, 288 Pa. 463, 465, 136 A. 787 (1927).

Parsons had been employed by Hercules as a blaster for thirteen years and during that time he never handled a shot which caused either personal injuries or property damage. Defendant's four experts testified that Parsons had the competence and experience to qualify him to properly plan and execute the September 24, 1959 shot. Plaintiffs' witness, Wilson, testified that Parsons was both competent and had the experience that was necessary to handle the blast at Watsontown.

On the other hand, Parsons frankly admitted that he had never detonated any dynamite in shale quarries using angle holes six and a quarter inch in diameter in a sloping face and not in conjunction with verticle holes. This was confirmed by Wilson. The testimony very clearly showed that Parsons simply did not know how to set off the type of blast that caused the Watsontown damage. He could not have established a reputation because he had never done this sort of thing.

Wilson, who as Hercules' employee selected Parsons to do the Watsontown blast, testified that to his knowledge Parsons had never done a primary blast in brick shale up to July, 1959. (Vol. II, N.T. pp. 99–100). Wilson further testified as follows: "[A]t that time I did not make any inquiry of Parsons as to whether or not he was qualified or otherwise because I already had that knowledge." (Vol. II, N.T. p. 109.) He did not state where he got that knowledge and Parsons frankly admitted he had never had any experiences in this particular situation. Wilson further stated: "I felt there was no reason to inquire as to his special qualifications." (Vol. II, N.T. p. 115.)

As we said in the April 18, 1966, Memorandum denying defendant's motion for a directed verdict:

"The general rules governing this type of situation are well stated in the Comment to the Restatement, Second, Torts § 411, which section deals with the negligence of an employer in the selection of a contractor. The black-letter rule is as follows:

"'An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or (b) to perform any duty which the employer owes to third persons.'

"Although the case at bar did not involve physical injuries to people, but injuries to personalty of Watsontown, the reasoning behind the rule, as outlined in the Comment, is applicable here. In Comment (b) of §. 411, it is stated that:

"'In order that the employer may be subject to liability it is, therefore, necessary that harm shall result from some quality in the contractor which made it negligent for the employer to entrust the work to him. Thus, if the incompetence of the contractor consists in his lack of skill and *experience* or of adequate equipment but not in any previous lack of attention or diligence in applying such experience and skill or using such equipment as he possesses, the employer is subject to liability for any harm caused by the contractor's lack of skill, *experience,* or equipment, but not for any harm caused solely by the contractor's inattention or negligence.' (Emphasis supplied).

"Here there was no doubt that Parsons had never performed a snakehole blast before. The rebuttable presumption, that he was competent, by the fact he was a licensed A–1 blaster, could be found to have been overcome by the facts that he received his license under a grandfather clause and that he had never had any experience in this particular type of a blast be-

fore. The fact he had observed a snakehole blast and that he had done other types of blasting with apparent success cannot be deemed sufficient to overcome Parsons' inexperience here. Parsons had never done any blasting in a brick shale quarry prior to 1959. (N.T. p. 280) Moreover, it appears from the testimony that this unfortunate blast occurred not because of Parsons' inattention or negligence, but because he did not know how to properly calculate the burden for a snakehole shot either because of his lack of skill or experience in this type of blasting.

"When the above facts are considered in light of the amount of care that should be exercised in selecting a person to engage in this type of activity, it is clear that this Court cannot grant Hercules' motion on this ground. The standard of care varies, naturally, as the circumstances vary. In Comment (c) to § 411 of the Restatement, it is stated that:

"'Certain factors are important: (1) the danger to which others will be exposed if the contractor's work is not properly done; (2) the character of the work to be done—whether the work lies within the competence of the average man or is work which can be properly done only by persons possessing special skill and training; and (3) the existence of a relation between the parties which imposes upon the one a peculiar duty of protecting the other.'

"In Pennsylvania, blasting is an ultrahazardous activity. McSparran v. Hanigan, 225 F.Supp. 628, 638 (E.D. Pa.1963). Thus when Comment (c) goes on to say that ' * * * the general principle (is) that the amount of care which should be used is proportionate to the danger involved in failing to use it * * *', it is quite evident that a very great degree of care should have been exercised by Hercules in selecting a blaster. In fact, the lack of experience here with this type of a shot, coupled with the fact that this was an ultrahazardous activity with which the employer had considerable knowledge and experience indicates that perhaps Hercules should have actually ascertained Parsons' competence in making a snakehole shot. Under these facts and circumstances, it cannot be said that no reasonable man could find that Hercules was not negligent in furnishing Parsons to Watsontown."

Under Restatement of Agency, Second, § 213(b), Comment (d), it is stated:

"One who employs another to act for him is not liable under the rule stated in this Section merely because the one employed is incompetent, vicious, or careless. If liability results it is because, under the circumstances, the employer has not taken the care which a prudent man would take in selecting the person for the business in hand. What precautions must be taken depend upon the situation. One can normally assume that another who offers to perform simple work is competent. *If, however, the work is likely to subject third persons to serious risk of great harm, there is a special duty of investigation.*" (Emphasis supplied.)

In the instant trial, the Court charged the jury as follows:

"In discussing this matter you will note that I referred to the question of negligence attributable to Hercules in furnishing an incompetent and inexperienced blaster. Therefore, when I speak of negligence I am referring to the problem as to whether or not there was negligence on the part of Hercules in furnishing the blaster which is separate and apart from any question of negligence on the part of the blaster himself because, and let me stress this, there can be a recovery from Hercules only if the damage complained of here was caused by actual incompetency and inexperience on the part of Parsons and which incompetency and inexperience Hercules either knew or by the exercise of reasonable diligence should have known before the

blast in this case because it cannot be based upon any mere negligence of Parsons. This is a very important distinction which you must make. Incompetence and inexperience are not synonymous with negligence. It is entirely possible for a thoroughly competent and experienced man occasionally to be negligent, and liability in this case cannot be predicated solely on the mere negligence of Parsons. I will refer to this again but I wanted to make this clear at this point that a person, even the most competent and experienced person, may cause damage by reason of negligence. The issue here is whether Hercules furnished Watsontown Brick with an incompetent and inexperienced servant to put off the blast and whether Hercules knew of the incompetence and inexperience of Parsons, or by the exercise of reasonable diligence should have known of said incompetence and inexperience before September 24, 1959, and whether the damage sustained by Watsontown Brick was the result of the incompetence and inexperience of the blaster." (Vol. XII, N.T. p. 31).

Again:

"In arriving at a verdict in the matter before you, you will have for your consideration and determination certain fundamental questions. The first one, of course, is basically was Charles Parsons incompetent and inexperienced to set off the blast of September 24, 1959, and if so, was there negligence on the part of the Defendant, Hercules Powder Company, in furnishing the Plaintiff, Watsontown Brick Company, with an incompetent and inexperienced blaster and which incompetence and inexperience Hercules either knew or in the exercise of reasonable care should have known prior to the blast, and which incompetence and inexperience was the proximate cause of the damage sustained by the Plaintiffs? All three of these elements must be determined by you to have existed before there

can be any liability on the Defendant." (Vol. XII, N.T. p. 37).

And again:

" * * * First of all, as to liability: Was Parsons incompetent and inexperienced? This, of course, is not determined by any one incident or circumstance. The question here, the thing that you are concerned about, is the actual proof of his incompetency and inexperience, if any. Did he have a reputation as being incompetent and inexperienced? It has been testified that no single blast is exactly like any other single blast. A single act of negligence does not establish incompetence and inexperience. A reputation in a situation like this would involve some action on the part of the blaster in order to establish a reputation either for good or for bad." (Vol. XII, N.T. p. 39).

Parsons never had a chance to establish a reputation as a competent and experienced blaster on the type of blast that was used here for the simple reason that he never set one off. It is also evident that there was no inquiry by defendant into Parsons' qualifications for this blast.

Under the testimony in this case, the jury was thoroughly justified in finding Hercules negligent in not furnishing a competent and experienced blaster.

## II

"Assuming there was sufficient evidence to justify the jury's finding that Parsons was incompetent and inexperienced, was there any legally sufficient evidence to support the jury's finding that the defendant knew or should have known that Parsons was incompetent and inexperienced?"

■ The testimony showed that Wilson was manager of the Hazleton, Pennsylvania, office of Hercules through 1959; that Wilson knew that Parsons received his blaster's license under the Grandfather's Clause of the Act; that Wilson had the authority to assign a blaster for the Watsontown blast; that

he knew that up to July, 1959, Parsons had never set off a primary blast in brick shale; that when planning the July 31 blast at Watsontown with verticle holes, Wilson made no inquiry of Parsons as to his qualifications to set off this particular type of blast for the reason, as he stated, that he already had that knowledge and could see no reason to so inquire.

Defendant's expert witnesses, Bickel, Rolland and McFarland, all testified on cross-examination that in the blasting industry the blaster should never take anything for granted if he does not have to. Parenthetically, Wilson did take for granted Parsons' competence and experience to set off the type of blast in the type of shale here involved. See Restatement of Agency, Second, § 213(b), Comment (d), supra.

Under the evidence in this case it is perfectly clear that the jury was fully justified in finding that Hercules knew or should have known of Parsons' incompetence and inexperience to set off the Watsontown blast of September 24, 1959.

### III

"Was Parsons negligent and, if so, does that negligence become, as a matter of law, the contributory negligence of Watsontown Brick Company, barring recovery by all the plaintiffs?"

As stated above, this case was tried on the narrow issue of whether Hercules furnished an incompetent or inexperienced blaster and that it knew or should have known of such incompetence or inexperience. Negligence, inexperience and incompetence are not synonymous. Suffice it to say the case was not tried on the theory of Parsons' negligence. Both plaintiffs and defendant argued this point as though it were completely encompassed in defendant's motion to show cause which is more fully covered hereafter.

### IV

"Do the indemnity provisions of the service agreement, defendant's Exhibit No. 2, bar the plaintiff, Watsontown Brick Company, from recovering anything from defendant and require Watsontown Brick Company to discharge that portion of the verdict awarded to the insurance company plaintiffs?"

In the Oregon case, supra, (118 F.Supp. at 607) the Court considered as one of the issues to be determined the following:

"'Does the language contained in Exhibit A [service agreement] have the operative effect of relieving defendant from liability for negligence in furnishing plaintiff incompetent and inexperienced employees?'"

The Court answered that as follows:

"As I have previously pointed out, I do not believe that it does. In my opinion, plaintiff may predicate liability on such ground."

The instant case was tried on that very narrow issue.

As we stated in our opinion of April 18, 1966:

"The ninth point raised by Hercules is that the service agreement provides that Watsontown will indemnify Hercules 'for any damage or loss resulting from' services of Hercules' employees. Therefore, it is asserted that Watsontown should not be allowed to recover from Hercules to avoid circuity of action and that any verdict recovered by the Insurance Companies must as a matter of law be paid by Watsontown. The indemnification provision relates to the negligence of the employee that was furnished. Although this is not expressly stated, this Court construes this agreement to so state. The intention of Hercules, as indicated by the testimony, oral arguments and briefs was to relieve itself of liability for the negligence of Parsons. The agreement does not relieve Hercules from its negligence in furnishing an incompetent or inexperienced employee."

I therefore conclude that the said Exhibit No. 2 (service agreement) does not

have the operative effect of relieving defendant from liability for negligence in furnishing plaintiff, Watsontown, an incompetent and inexperienced employee.

## V

"Was there any evidence of fair market value of the buildings, machinery, and equipment immediately prior to the blast of September 24, 1959?"

Plaintiffs have accepted this question with the understanding that the following be added:

"If the plaintiff proves the cost of repairs to damaged property, who has the burden of proof as to whether the cost of repairs exceeds the fair market value of the property before it was damaged?"

■ Charles Fisher, President of Watsontown, testified at considerable length as to the fair market value of the property. Generally speaking, an owner is competent to testify as to his opinion as to the value of his property. Under the law of condemnation in Pennsylvania, replacement cost is one of the items which may be taken into consideration in arriving at an opinion of fair market value. 26 P.S. § 1–705(2).

In Hencken et ux. v. Bethlehem Municipal Water Authority, 364 Pa. 408–414, 72 A.2d 264, 267 (1950), a condemnation case, the Court said, inter alia: (quoting from Westinghouse Air Brake Co. v. City of Pittsburgh, 316 Pa. 372, 376–377, 176 A. 13, 15 (1934))

" * * * 'An owner through personal knowledge of his property, with a reasonable opportunity to observe its area, the uses to which it may be put, the extent and condition of any improvements thereon, possesses sufficient knowledge from which to form an opinion as to the value of his own property. Such an owner may not be familiar with the general prices of property in the neighborhood, nor may he possess all the qualifications that would be required of others who testify as to value. Nevertheless, because he is an owner with a general knowledge of his property, he is a competent witness. * * *' "

■ There certainly was considerable evidence on the fair market value of the buildings, machinery and equipment immediately prior to the blast of September 24, 1959. The witness was competent to testify and the evaluation of the testimony was clearly for the determination of the jury.

■ Furthermore, where plaintiff also introduces evidence of the cost of repairs to the property the burden shifts to defendant to establish matters asserted by him in mitigation or reduction of the amount of damages. Boulding v. Hughes, 59 Dauph. 377 (1948); 11 P.L. E. Damages §§ 59, 131. I feel that defendant failed to meet that burden.

## VI

"Was there legally sufficient evidence to permit the jury to award the plaintiff, Watsontown Brick Company, any loss of profits for the fourth quarter in the year 1959?"

The testimony showed that the plant was out of production for the entire fourth quarter of 1959; that Watsontown had an accumulated profit for that year at the time of the blast of $21,266.95; that 1959 was an exceptionally good year for the brick business; that Watsontown had a large backlog of orders available for the last quarter of 1959 but for the blast. Defendant educed that for a number of years Watsontown consistently showed a substantial decline in the last quarter. However, defendant offered no evidence to contradict Watsontown's evidence that 1959 throughout was an exceptionally good year for the brick business.

■ In the case of an established business, lost profits may be recovered if they can be made reasonably certain by competent proof. Koren v. George et al., 159 Pa.Super. 182, 48 A.2d 139 (1946).

■ The matter of loss of profits, if any, for the fourth quarter of 1959 was properly left for determination by the jury.

### VII

"Was it proper for the Court to submit the question of detention damages to the jury?"

■ On this matter the Court charged as follows:

"Plaintiffs have also made a claim for detention and delay damages. Evidence was introduced that a demand for payment of damages was timely made by Watsontown and this was refused by general counsel for Hercules. If from all of the evidence in this case you find that for some reason Hercules was justified in so refusing, there could be no recovery. If, on the other hand, you conclude from all of the evidence that Hercules' refusal to compensate Watsontown for damages caused by the September 24, 1959 blast was arbitrary and capricious, you may then allow Watsontown damages for such delay, not to exceed 6% of the amount of damages you have found Watsontown to be entitled to on the damages to the buildings and machinery, dated from the date of Hercules' refusal. The Plaintiffs' claim against the Defendant must have been reasonable before these damages should be awarded, and these delay damages should not be awarded if you find the delay is the Plaintiff's fault, and the Defendant was justified in refusing to pay the Claims." (Vol. XII, N.T. p. 49).

Defendant calls our attention to Conover v. Bloom, 269 Pa. 548, 549, 112 A. 752 (1921), where the Court said:

"In proper cases, when the action is in trespass, compensation, not exceeding the legal rate of interest, may be given for undue detention of the recoverable sum. This is permissible on the ground that there has been an improper withholding of what is due. The rule, therefore, cannot be invoked where the demand made was unreasonable * * *; a fact, however, which must be made to appear affirmatively by the defendant * * *."

See also, Hoffman v. City of Philadelphia, 261 Pa. 473, 104 A. 674 (1918).

I feel that the charge of the Court was entirely consistent with the rule set down in Conover. The defendant made no effort to prove that Watsontown demanded excessive damages, their attitude was that Watsontown was entitled to nothing.[1]

The jury was properly charged and it found under all of the circumstances of the case that Watsontown was entitled to delay or detention damages and accordingly awarded an amount equivalent to 4% of the damage to the building, well within the limit set in Conover, supra.

■ Furthermore, defendant had the burden of proving that Watsontown's demand was unreasonable and this burden defendant failed to meet. See Hoffman v. City of Philadelphia, supra.

### VIII

"Should the prior testimony of John L. Romig have been admitted?"

■ Under the Act of 1887, P.L. 158, § 9, 28 P.S. § 327, when a witness testified in a prior trial and was subject to cross-examination and he is not available for the second trial his testimony may be read. See Rule 43(a), Federal Rules of Civil Procedure.

■ John L. Romig, a former employee of Atlas Powder Company, testified in the first trial of this case in June 1965, and was extensively cross-examined by defendant. He is presently living outside the jurisdiction of this court and therefore was not amenable to a subpoena to testify at the trial.

1. A copy of the said service agreement was admitted in evidence as defendant's Exhibit No. 2.

He refused to testify voluntarily either in court or by deposition. He therefore was clearly not available for the second trial.

Parenthetically, his testimony was merely cumulative of defendant's own evidence that the September 24, 1959, blast was overloaded. It will be recalled that defendant in its brief (p. 9) stated: "That Parsons did not properly calculate the burden * * * cannot be denied by the Defendant."

The Court did not err in admitting the testimony of John L. Romig given in the first trial.

 On January 17, 1967, defendant filed a motion for a Rule to Show Cause, raising the following questions:

"1. Why the Court should not make an Order directing the inclusion in the official Court record of this action, the interrogatories as submitted to the jury in the first trial, and the affirmative answer to number 1 thereof, and

"2. Why the Court should not make an Order directing the clerk to enter judgment on the jury's answer to the first interrogatory in accordance with the Federal Rules of Civil Procedure, Rule 58."

Attached to the motion was an affidavit of defendant's trial counsel which states, inter alia, as follows:

"3. That the jury, previous to their returning to the Courtroom to announce that they were unable to reach a verdict, had unanimously agreed, and had answered in the affirmative, interrogatory No. 1 which had been submitted to them, and your deponent saw the interrogatory sheet which contained the word, 'Yes', written in the space for the answer to the first interrogatory."

On June 22, 1966, near the end of the second trial and about one year after the first trial, counsel for defendant moved for a directed verdict for the reason,

inter alia, that the jury had "unanimously" answered Interrogatory No. 1 in the affirmative in the first trial and that said answer was not in the file. The matter was next brought up by counsel for defendant on January 5, 1967, on the occasion of the argument on the instant motions for judgment n. o. v. and new trial.

In the first trial the Court charged the jury as follows: (N.T. Book 6, pp. 1499–1500)

"Now, then, I am submitting to you these interrogatories. Be careful to answer as the instructions indicate.

"1. Was Charles R. Parsons negligent, and was such negligence the proximate cause of the blast damage?

"That question you will answer either yes or no. You will then proceed to No. 2. Let me make it clear members of the jury. You will in any event answer at least the first and second interrogatories. You will answer yes or no, was Charles Parsons negligent, and was such negligence the proximate cause of the blast damage?

"Now, then, No. 2. Was Charles R. Parsons on September 24, 1959 an incompetent blaster under the facts and circumstances of this case?

"The comment there is if your answer to this Question No. 2 is no, that will end the case. Your verdict will then be for the defendant and you need answer no further questions. If your answer to this question is yes, then you will proceed to answer the following. I trust that is clear, members of the jury. You will under any circumstances pass on No. 1 and 2. If, as I have indicated, your answer to Question No. 2 in which we say, Was Charles R. Parsons on September 24, 1959 an incompetent blaster?—if your answer to this question No. 2 is no; in other words, if you find that he was a competent blaster, that ends the case. Assuming that your answer is yes, then you go on to the third question. Assuming that

you have found Charles R. Parsons to have been an incompetent blaster, At Watsontown Brick Company on September 24, 1959 was such incompetence as distinguished from mere negligence, approximate (sic) cause of the injury and damage sustained by the plaintiff?

"If your answer to this question is no, that will end the case. Your verdict will be for the defendant and you need answer no further questions. If your answer is yes, then you will proceed to answer the fourth question having reached this point.

"4. Did the defendant Hercules Powder Company prior to the blast at the Watsontown Brick Company on September 24, 1959 know or by the exercise of reasonable care should it have known that Charles R. Parsons was an incompetent blaster under the facts and circumstances of this case.

"If your answer to that question is no that will end the case. Your verdict will be for the defendant and you need answer no further question. * * * "

Then follows an interrogatory on damages.

Prior to the second trial plaintiffs were permitted to amend their complaint to read, in part, as follows:

"5. The defendant was negligent in furnishing an incompetent and inexperienced agent, servant, workman or employee to supervise the preparation of and setting off the said blast, the inexperience of said agent causing him to mis-calculate the burden of rock he was blasting and to use twice the amount of the explosives which should have been used.

"9. That the defendant was wantonly negligent in furnishing an incompetent and inexperienced agent, servant, workman or employee to supervise and prepare the setting off of the blast, the inexperience of said agent causing him to mis-calculate the burden of rock he was blasting and to use twice the amount of the explosives which should have been used."

An examination of the record of the first jury trial (N.T. Book 6, p. 1504) shows that the jury retired and then sent the Court a note as follows: " 'Will you please explain incompetent for us?' " Then in open court the Court charged the jury as to the meaning of incompetent. Then on pages 1505 and 1506 a juror asked leave to ask a question. The Court cautioned the jury not to let it know how they were voting and a juror asked the following question: "Does this case rest on one word, incompetent?" The Court, after a few words concerning the above question, had the jury retire. (N.T. Book 6, p. 1506). Then followed a note from the foreman (N.T. Book 6, p. 1507), to wit: " 'This jury is unable to reach a verdict.' " Then in open court the Judge cautioned the jury not to tell how they were voting and then a juror said: (N.T. Book 6, p. 1507) "May I state to Your Honor what the bone of contention is?" The Court replied: "I don't think you better. * * * If you can't agree after one more effort, that will be it. You can now retire." The jury retired and then returned in open court. (N.T. Book 6, p. 1507) The Court said: "Members of the jury, have you reached a verdict?" The foreman replied: "Your Honor, the jury has not reached a verdict." The record then shows on page 1507-A, "The Court: You are now excused."

The statement of the foreman was accepted without challenge by either plaintiffs or defendant. The jury was not polled and nothing further was said about the form of interrogatories or verdict that were given the jury.

The affidavit submitted by defendant's attorney states as a fact that the jury before informing the Court that they were unable to reach a verdict had "unanimously" answered Interrogatory No.

 

1 in the affirmative. The affidavit does not state at what stage of the proceedings he saw the interrogatory sheet or how he knew the vote on Interrogatory No. 1 was unanimous.

The motion asserts that Interrogatory No. 1 had been answered in the affirmative prior to the time the jury announced their disagreement and that the interrogatory upon which they could not agree was No. 2. There is absolutely nothing in the record to justify such conclusions, nor indeed that the alleged vote on Interrogatory No. 1 was unanimous.

In California Fruit Exchange v. Henry et al., 89 F.Supp. 580, 588 (W.D.Pa. 1950), aff. 184 F.2d 517 (3d Cir. 1950), the Court said:

"* * * All of the authorities agree that the only verdict is that which the jury announces orally in court, and which alone is received and recorded as the jury's finding. * *"

Had counsel for defendant wished to preserve as part of the record what the jury did concerning the interrogatories he should have so moved prior to the discharge of the jury.

Even assuming, for the sake of argument, that the jury had answered Interrogatory No. 1 in the affirmative, it could not be considered without the answer to No. 2 as the jury was instructed to answer both interrogatories.

Furthermore, if the first interrogatory had been answered in the affirmative, it was incumbent on defendant, before the jury was discharged, to have the jury report its partial finding to the Court in open court and give opposing counsel an opportunity to poll the jury on the question of whether it had answered Interrogatory No. 1 unanimously in the affirmative. The first move made by defendant was on June 22, 1966 (one year after the first trial) when it moved for a directed verdict. Under these circumstances there was no partial verdict in the first trial.

Defendant's motions for Rule to Show Cause, for judgment n. o. v. and for a new trial will be denied.